McKINNEY v. KALAMAZOO-CITY SAVINGS BANK.

1. GIFTS—BURDEN UPON ONE SEEKING TO ESTABLISH GIFT.
  In a suit by a son to establish his ownership, by gift, of bank stock standing in his mother's name, the burden rested upon him to establish his ownership by a preponderance of the evidence.

2. SAME—ASSIGNMENT OF STOCK IN BLANK INSUFFICIENT TO ESTABLISH GIFT.
  The signature of the mother assigning in blank stock owned by her was insufficient to establish a gift of it to a son, where the preponderance of the evidence is that she so signed it in order to enable him to procure a loan for her.

3. EXECUTORS AND ADMINISTRATORS—WITNESSES—WAIVER—WHEN OBJECTION TO ADMISSION OF PRIVILEGED COMMUNICATION MAY BE WAIVED BY ADMINISTRATOR.
  Waiver by an administrator of objection to the admission of testimony relating to a privileged communication by testatrix to her attorney may be made only for the protection of the estate, and not for its dissipation or diminution.

4. WILLS—BEQUEST OF STOCK TO PAY OBLIGATION—GIFTS.
  A bequest of bank stock to testatrix's sister, for the purpose of paying an obligation, as recited in the will, should be given effect as against the claim of testatrix's son that she afterwards gave the stock to him, where the preponderance of the evidence is against his claim, and the only evidence of a gift is an assignment in blank signed by the mother.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 8, 1928. (Docket No. 60, Calendar No. 33,638.) Decided October 1, 1928.

Bill by Howard R. McKinney against the Kalamazoo-City Savings Bank to establish the ownership of certain shares of stock. Kittie Connell was permitted to intervene as a party defendant and claimed title to such stock under the last will of Mary E.

McKinney, deceased. From a decree for the intervening defendant, plaintiff appeals. Affirmed.

*Jackson, Fitzgerald & Dalm,* for plaintiff.

*Glenn R. Faling,* for intervener.

Sharpe, J. The opinion of the trial court is so fully in accord with the conclusion we have reached upon the facts and the law applicable thereto that we adopt it as our own. It reads as follows:

"Mary E. McKinney, for many years a resident of Kalamazoo, died January 20, 1924, in a Detroit hospital, after a long and very severe illness caused by cancer. Her life finally passed from complete exhaustion caused by the most intense suffering possible, the details of which appear upon the record. Her condition and suffering during the last few weeks of her life are almost indescribable; no adequate conception can be had, except by reading the testimony, particularly that of the attending nurse. For several months it was necessary to administer morphine regularly to relieve the intense pain and to enable her to rest. For several weeks preceding her death, it was apparent to all acquainted with her condition, that she could not live very long. Her two children, plaintiff and his sister, resided in Canton, Ohio, and were kept fully advised by the graduate nurse, Margaret Sullivan, who had entire care of deceased, and who was a niece of deceased. She wrote them frequently regarding the condition of their mother, particularly during the period following the Christmas holidays. Plaintiff and his sister both fully understood that their mother could not be expected to live very long. So terrible were the pain and suffering, it was necessary to administer morphine during the last few weeks in constantly increasing quantities.

"Deceased owned her homestead in Kalamazoo, valued at approximately ten thousand ($10,000)

dollars unincumbered, some stock in the Globe Casket Manufacturing Company, which had been pledged as collateral for a loan and in which she had a very small, if any, equity, and thirteen (13) shares of the capital stock of the Kalamazoo-City Savings Bank of the par value of thirteen hundred ($1,300) dollars, but of the fair market value of approximately two thousand ($2,000) dollars. Deceased, apparently, had no available funds for the expenses of this last sickness. Plaintiff and his sister supplied the money with which to pay the expenses; plaintiff advanced about eight hundred ($800) dollars. In November, 1923, plaintiff went to the Home Savings Bank in Kalamazoo, where his mother had a safety deposit box, and procured the certificate of thirteen shares of stock in the Kalamazoo-City Savings Bank. He talked with Herbert E. Johnson, president of the Kalamazoo-City Savings Bank, about securing a loan against this stock. Mr. Johnson referred him to the Home Savings Bank. He then asked Mr. VanBochove, cashier of the latter bank, if his mother could borrow six hundred ($600) dollars for 90 days with this stock as collateral, and was told that she could. Mr. VanBochove gave him a blank note for his mother to sign, which plaintiff took away with him. Plaintiff claims that he then proceeded to Toledo by automobile, with the stock certificate in his traveling bag, and that the latter was taken from his automobile while the same was standing on one of the streets in Toledo. He signed the blank note, furnished by Mr. VanBochove himself, and forwarded it to Mr. VanBochove. It was returned to him with a letter stating that his mother would have to sign the note. Plaintiff then arranged with the City Savings Bank to issue a duplicate certificate, filing a bond for the protection of the bank. The new certificate was issued January 2d. On the afternoon of January 5th, plaintiff called upon his mother at the Detroit hospital. His cousin, Miss Sullivan, the nurse, left the room, having adminis-

tered ½ grain of morphine to her patient 20 or 30 minutes before. After a half hour or so, plaintiff presented a paper to Miss Sullivan at the nurses' desk in the hall for her signature, saying in substance that it had to do with the loss of the stock certificate taken from his automobile. Miss Sullivan had been informed of that alleged circumstance, regretted its occurrence very much, and was in entire sympathy with plaintiff and willing and anxious to assist him in any way that she could. Her signature appears as a witness to a purported assignment of the certificate, signed by deceased in ink. There is no question as to the genuineness of the signature of deceased, nor can there be any serious question, if any at all, that she was mentally competent at the time to visit with her friends and relatives and to know and understand the nature of such, if any, negotiations as she may have had with plaintiff, but that she was very weak and near complete exhaustion is not open to serious discussion. Miss Sullivan is unable to say that the signature of the deceased was attached to the assignment when she signed it at her desk in the hall. Her attention was not called to Mrs. McKinney's signature, nor was the true nature of the transaction explained to her. The only explanation that was offered by plaintiff was, as already stated, that the paper had to do with the difficulty which he encountered as the result of the loss of the original stock certificate. The blank portions of the purported assignment on the back of the certificate, apparently witnessed by Miss Sullivan, when offered in evidence upon the hearing, were filled in with pencil in a handwriting other than that of deceased. Miss Sullivan was a very persuasive and convincing witness. I have no doubt whatever as to the truthfulness and fairness of her testimony; neither am I able to find any troublesome conflict, if indeed any conflict at all, between her testimony and that of any other witness, but if it can be said there is any conflict it should and must be

resolved in favor of her testimony. I make this finding in full light of the testimony of the plaintiff's witness, Muriel Fletcher, whose veracity I have no difficulty in accepting.

"Deceased left a will executed March 23, 1921, the second paragraph of which is as follows: 'My late husband, Robert E. McKinney, owed in his lifetime to my sister, Kittie Connell, a sum of money represented by a promissory note, the amount of which I do not know, but which I direct shall be paid in full out of my estate.' On October 31, 1922, deceased executed a codicil, paragraph one of which is as follows: 'I hereby revoke paragraph two in my said last will and testament and in the place and stead of the provision therein made for Kittie Connell I give and bequeath to her any and all shares of the capital stock of the Kalamazoo-City Savings Bank, Kalamazoo, Michigan, which I may own at the time of my decease.'

"Immediately after the funeral, a controversy arose relative to the ownership of the 13 shares of the capital stock of the Kalamazoo-City Savings Bank. Plaintiff claimed to be the owner and made demand upon the bank to transfer the stock to him. The bank refused to recognize his ownership, having in mind presumably his earlier message from his mother containing a request for a loan of $600 to her, and that the deceased had, by that portion of her codicil just quoted, made a specific bequest of this stock to her sister, Kittie Connell. Plaintiff thereupon filed this bill to compel the bank to transfer the stock. The bank filed its answer, asking the court to determine the ownership. Defendant and cross-plaintiff, Kittie Connell, thereupon intervened, praying that the stock be adjudicated to be a part of the assets of the estate and that the administrator with the will annexed be required to assign and transfer it to her in accordance with the provision in the will. The administrator with the will annexed filed his answer to Kittie Connell's cross-bill resist-

ing the prayer thereof and acquiesced in the demand of the plaintiff. The administrator with the will annexed and his wife, both of whom were witnesses for plaintiff, are, as shown by the testimony and by their attitude both in court and out, admittedly most friendly to plaintiff and his sister.

"The record abounds with evidence and with the legitimate inferences necessarily to be drawn therefrom that Mary E. McKinney did not intend to give and did not give plaintiff this stock, and that he at no time became the owner thereof by assignment from his mother as or for a gift to him from her. He does not claim to have bought it. The only direct evidence available clearly indicates that his mother never intended to give and never did give plaintiff this stock. There was no occasion for her to give it to him, nor was there anything to indicate any desire on her part to do so. Plaintiff had not advanced money for his mother's expenses in sums equal to one-half the value of this stock. There was as much or more reason for deceased to assign the stock to her daughter than to plaintiff. Deceased had twice, first in her will in March, 1921, and secondly in her codicil on the last day of October, 1922, recognized a definite and positive obligation to her sister, Kittie Connell, and in her codicil, which evidently was made upon and after mature reflection, she discharged that obligation by a specific bequest of this stock to her sister. This was but a few days more than a year before plaintiff obtained the original stock certificate from the safety deposit box in the Home Savings Bank. Deceased at all times prior to her death was possessed of unincumbered real estate, which she was devising to her children, of a value far greater than was necessary to meet any demands they might have against her estate. Plaintiff insists that deceased was mentally competent, in full possession of all of her normal mental faculties. Conceding that to be true, it must necessarily follow that she still was able to appreciate the nature of

her obligation to her sister and that she had ample property with which her children would be fully reimbursed for any and all moneys that they might have advanced for her care. Moreover, in the light of her retention of her mental faculties during all those terrible months of administration of morphine, it must appear that she retained that lack of confidence in the ability of plaintiff to handle money or property which she indicated so plainly in her will and codicil. Paragraph five of the will, after giving her residuary estate to plaintiff and his sister, provides: 'That the share of the residue of my estate going to my said son, Robert Howard McKinney, under this paragraph of my will, shall not be delivered and paid over to him until he shall have arrived at the age of thirty years.' In her will, she named Arthur S. Prentice, a neighbor, in no way related, as executor. In the codicil, she named her son-in-law.

"The burden rested upon the plaintiff to establish his ownership by the preponderance of the evidence. The evidence clearly preponderates against his claim. The record is barren of any evidence of ownership, except plaintiff's mere naked custody of the stock certificate with the assignment signed in blank, and the only reasonable theory upon which to account for that, under the evidence, is, that he was permitted the custody of the certificate with the assignment in blank for the purpose of securing a loan that was to be made direct to his mother. Even the testimony of Frank S. Weston, the attorney for the administrator with the will annexed, though offered in support of plaintiff's claim, is entirely consistent with the theory that deceased signed the assignment in blank in order to enable plaintiff to secure a loan to her. There is nothing in Mr. Weston's testimony that in any way conflicts with or opposes the theory and claim of the intervening defendant, Kittie Connell, that plaintiff, on January 5th, was acting in a purely fiduciary capacity. The testimony of this

witness was received over the objection of counsel for the estate of Kittie Connell (she being now deceased) and is, in my opinion, incompetent, but after all, harmless. It related to a privileged communication. The privilege could only be waived by the administrator for the protection of the estate, and not for the dissipation or the diminution thereof.

"Plaintiff, while occupying the fiduciary relation of an advising and protecting son of a mother who, undoubtedly, realized that she was fast approaching the final dissolution soon to occur, in some manner and for some purpose, known only to himself, except as so clearly shown by the evidence, obtained possession of this certificate with his mother's signature attached to a blank assignment clause. The burden resting upon him to account for his custody for any other purpose than that so clearly shown by the evidence, could, had he been so disposed, have been very easily discharged by laying the foundation for it at the time. This he failed to do, though he had the fullest opportunity.

"This court must, under the circumstances, do its plain duty in the premises by a decree that may effectuate the last will of the deceased and which will not take from her estate or from her sister's estate that which she intended her sister to have and of which she did not intend to make a gift to plaintiff. Above all things, it was the intention of deceased to be just before she was generous. In order to find that she changed her mind and decided on the very eve of her dissolution to be generous to her son and unjust to her sister, we would have to ignore the evidence and wander far afield into the realms of speculation and conjecture. A decree may be presented in accordance with these views."

The decree entered pursuant thereto is affirmed, with costs to appellee.

Fead, C. J., and North, Fellows, Wiest, Clark, McDonald, and Potter, JJ., concurred.