EICHOLTZ v. GRUNEWALD.

1. APPEAL AND ERROR—SPECIFIC PERFORMANCE—CONTRACT TO MAKE
   MUTUAL RECIPROCAL IDENTICAL WILLS—SETTING ASIDE CONVEY-
   ANCES—CHANCERY CASE—DE NOVO REVIEW.

   Suit to compel specific performance of a claimed oral agreement
   between husband and wife to make mutual reciprocal identical
   wills, binding on the survivor, and to set aside certain con-
   veyances made by the husband after the death of his wife be-
   ing a chancery case is reviewed *de novo* by the Supreme Court.

2. WITNESSES—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT
   —WAIVER.

   Generally the communications between an attorney and client are
   privileged but the privilege belongs to the client and the client
   may waive it.

3. SAME—PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT—
   WAIVER BY ADMINISTRATOR.

   The privilege of secrecy attached to a communication to an at-
   torney by a deceased client can only be waived by the adminis-
   trator for the protection of the deceased's estate and not for
   the dissipation or the diminution thereof.

4. SAME—ATTORNEY AND CLIENT—PREPARATION OF WILL—PRIVILEGED
   COMMUNICATIONS.

   Communications between an attorney and his client during the
   preparation of a will are not privileged in a contest between
   parties not strangers to the estate in the absence of a control-
   ling statute.

5. SAME—ATTORNEY AND CLIENT—RETENTION OF PRIVILEGE TO COM-
   MUNICATION.

   Communications by a client to an attorney are not privileged in
   a suit between parties, both of whom are claiming under the
   client, now deceased, as the principal reason for the privilege
   of secrecy no longer exists.

6. SAME—WILL CONTEST—TESTIMONY BY SCRIVENER—ATTORNEY WHO
   WAS A SUBSCRIBING WITNESS.

   An attorney who drafted wills for husband and wife and codicils
   thereto and was a subscribing witness to each of the instru-

ments could testify as to what he learned as a subscribing witness in the presence of another person in a suit between the surviving children after the death of their parents, such being an exception to the general rule that an attorney can not testify as to privileged communications except as consented to by his client.

7. WILLS—HUSBAND AND WIFE—IDENTICAL WILLS—CONTRACT TO MAKE MUTUAL WILLS—EVIDENCE.

The mere fact alone that two identical wills are made by husband and wife does not suffice to establish an oral agreement to make mutual reciprocal wills, each to be binding on the other, especially where they were made at different times.

8. SAME—IRREVOCABILITY OF CONTRACT TO MAKE MUTUAL WILLS.

It is the contract to make a joint and mutual will, not the will itself, that is irrevocable by survivor after the death of one party to it.

9. SPECIFIC PERFORMANCE—CONTRACT TO LEAVE PROPERTY BY WILL—EVIDENCE.

Before specific performance of an alleged contract to leave property by will or otherwise may be decreed, a contract must be shown, for regardless of the equities in a case, the court cannot make a contract for the parties when none exists.

10. SAME—BURDEN OF PROOF.

One seeking specific performance of a contract to leave property by will has the burden of proving the contract.

11. SAME—ORAL CONTRACT TO CONVEY PROPERTY BY WILL—TESTIMONY VIEWED WITH CAUTION.

Testimony concerning oral agreement to leave property by will must be viewed with great caution because of frailties of memory, improbability of repeating precise language of deceased and expressing full state of mind of such person, and greater weight is given to the acts of alleged contracting parties.

12. SAME—ORAL CONTRACTS—WILLS—CLOSE SCRUTINY OF EVIDENCE.

While the required proof in a suit for specific performance of an alleged oral agreement to leave property by will is the same as in civil cases generally, the nature of the litigation is such as to require courts to scrutinize the testimony closely and to weigh it and test it in the light of all circumstances disclosed by the record since estates of deceased persons should not be diverted in consequence of such agreements except upon proof which satisfies the mind and conscience of the court that the contract was made as claimed.

13. APPEAL AND ERROR—CHANCERY CASE—FINDINGS OF COURT.
> When the testimony in a chancery case is conflicting, the findings of the trial court will be upheld in the absence of a definite showing that a contrary result should have been reached.

14. WILLS—HUSBAND AND WIFE—CONTRACT TO MAKE MUTUAL WILLS —FINDING OF COURT—EVIDENCE.
> In suit between the surviving children of a husband and wife who had made two identical wills at different times, finding of trial court that plaintiffs had failed to sustain the burden of proving an oral agreement between the parents to execute mutual reciprocal or joint wills, to be binding on each of them and the survivor, was sustained by testimony.

15. DEEDS—UNDUE INFLUENCE—FRAUD—DURESS—EVIDENCE.
> In suit between surviving children of testator to set aside conveyances to a defendant, finding of trial court that plaintiffs' claim that such conveyances were obtained by undue influence, fraud, coercion and duress perpetrated by such defendant against her father was not sustained by the proof *held*, proper.

16. EQUITY—SPECIFIC PERFORMANCE—CONTRACT TO MAKE MUTUAL WILLS—SETTING ASIDE DEEDS—FRAUD—UNDUE INFLUENCE—DURESS—EVIDENCE—DESCENT AND DISTRIBUTION.
> In suit between surviving children of husband and wife who had made identical wills at different dates for specific performance of an alleged oral agreement to make mutual reciprocal identical wills, binding on the survivor, and to set aside certain deeds of property made by husband after death of his wife on the ground they were procured by one of the defendants by means of fraud, undue influence, duress and coercion against her father, where neither claim was sustained, the bill should have been dismissed and the court had no power to make distribution of the property other than had lawfully been made by testator.

17. APPEAL AND ERROR—QUESTIONS REVIEWABLE—JUDGMENT—STIPULATIONS.
> Insofar as decree in suit between surviving children for specific performance of alleged oral contract of husband and wife to make mutual reciprocal identical wills and for setting aside conveyances by husband to defendant daughter purported to clear the title claimed to have been conveyed by testator to others than the children it is affirmed where pleadings and issues do not justify such provision in the decree and stipulation filed in cause omitted controversy as to such conveyances from consideration on appeal.

Appeal from Wayne; Callender (Sherman D.), J. Submitted January 16, 1946. (Docket No. 34, Calendar No. 43,244.)   Decided March 4, 1946.

Bill by George Eicholtz and others against Rose Grunewald and others for specific performance of an oral contract to make mutual reciprocal wills binding on the survivor and to set aside certain conveyances.   Decree for defendants Grunewald but requiring conveyance of certain property or payment to estate.   Plaintiffs appeal.   Defendants Grunewald and Harold and Charlotte Eicholtz cross-appeal.   Decree dismissing bill and affirming lower court decree in portion stipulated by parties as not being affected by appeal.

*Bernard A. Clark,* for plaintiffs.

*Walter M. Nelson,* for defendants and cross appellants.

BOYLES, J.   Plaintiffs are six of the surviving children of John H. Eicholtz and Katherine Eicholtz, husband and wife, both deceased.   Defendants (cross-appellants) Rose Grunewald and Harold Eicholtz are the other two surviving children of said decedents.   The other defendants were joined for purposes not important to the main issues involved. The bill of complaint was filed to compel specific performance of a claimed oral agreement which plaintiffs assert was entered into by John H. Eicholtz and Katherine Eicholtz during lifetime to make mutual reciprocal identical wills, binding on the survivor, and to set aside certain conveyances and transfers of property made by John H. Eicholtz after the death of his wife on the ground that they were procured by the defendant Rose Grunewald by

means of fraud, undue influence, duress and coercion against her father, John H. Eicholtz.

The defendants deny that John H. Eicholtz and Katherine Eicholtz ever entered into any agreement to execute mutual reciprocal identical wills, binding on the survivor, deny that the conveyances and transfers of property by John H. Eicholtz were induced by undue influence, fraud, coercion or duress, or any other unlawful means, assert that under the conclusions reached by the trial court as announced in the decree the court had no legal basis for making a distribution of the property of John H. Eicholtz different from that made by him during lifetime, and ask that the bill of complaint be dismissed.

This is a chancery case, the outcome of which rests largely on the proofs adduced, and which we review *de novo*. Preliminary to a consideration of evidence it is necessary to decide whether the testimony of one Charles N. Belcher, an attorney, was admissible. He was sworn and testified as a witness for the defendants and his testimony was received over the objection of plaintiffs that it was privileged as between attorney and clients, and inadmissible for that reason.

The defendants insist that the testimony of Charles N. Belcher was admissible because the privilege of confidential communication, if such existed, was waived by Rose Grunewald, the personal representative of the estates of both of Mr. Belcher's clients, John H. Eicholtz and Katherine Eicholtz. It is generally true that the rule which excludes testimony as to communications between client and attorney establishes a privilege which belongs to the client and which the client may waive.

"There is a privilege of secrecy as to what passes between attorney and client, but it is the privilege of the client and he may waive it if he so chooses."

*Passmore* v. *Passmore's Estate,* 50 Mich. 626, 627 (45 Am. Rep. 62).

Obviously the clients of attorney Belcher could not themselves waive their privilege at the trial, both being deceased. Attorney Belcher was called as a witness on behalf of the defendants, including Rose Grunewald who had been appointed executrix of both estates. It was for her personal benefit to waive the privilege and consent to receiving the attorney's testimony. The testimony of the attorney tended to benefit Rose Grunewald individually, and not to benefit the estate. On the contrary, the attorney's testimony was detrimental to the estate in that it tended to support the claim of Rose Grunewald that there was no oral agreement made by Mr. and Mrs. Eicholtz to make mutual reciprocal wills, and furthermore tended to support her claim that there was no legal impediment to the conveyances and transfers to her by her father of certain property by means of which the estate of John H. Eicholtz was diminished. Under such circumstances, Rose Grunewald was not acting in the capacity of personal representative of the deceased in waiving the privilege, her attempted waiver was not for the benefit of the estate, and was ineffectual to bind the estate.

"The privilege could only be waived by the administrator for the protection of the estate, and not for the dissipation or the diminution thereof." *McKinney* v. *Kalamazoo-City Savings Bank,* 244 Mich. 246, 253.

However, there are reasons other than waiver why the testimony of the attorney was admissible. This suit is between Mr. Eicholtz's grantees, devisees, legatees and heirs-at-law, all of whom base their claims under him, either through his will or by

conveyances and transfers from him during his lifetime. After his death, where all the parties are claiming under him, the principal reason for the privilege of secrecy no longer exists.

"The great weight of the authorities and the text-writers is that communications between attorney and client during the preparation of a will are not privileged. This rule, where the contest is between parties not strangers to the estate, appears to be universal, except where a statute controls." *In re Loree's Estate,* 158 Mich. 372, 377.

See, also, 64 A. L. R. 185, and cases cited.

"In suit by the daughter to set aside a deed by the father of a farm to the son, both parties claiming under the client, and neither being a stranger to the estate, the rule of privilege between attorney and client has no application, so that testimony by the attorney who drew the deed and another who had desk room in his office, as to the conversation between the attorney and the father at the time the deed was drafted, was admissible." *Warner* v. *Kerr* (syllabus), 216 Mich. 139.

John H. Eicholtz and Katherine Eicholtz both had knowledge that Mr. Belcher was acting for both of them in consultation, advice and the preparation of their wills. Their conversations with the attorney were in the presence of Rose Grunewald. The testimony was not privileged. *House* v. *House,* 61 Mich. 69 (1 Am. St. Rep. 570); *Dikeman* v. *Arnold,* 78 Mich. 455; *People* v. *Andre,* 153 Mich. 531; *Denby* v. *Dorman,* 261 Mich. 500. Attorney Belcher who drafted both wills and both codicils is a subscribing witness to each of the four instruments. He could testify as to what he learned as a subscribing witness. *In re Heiler's Estate,* 288 Mich. 49.

We do not question the rule that communications by a client to an attorney are generally matters in

regard to which the attorney can not testify except
as consented to by his client. The circumstances of
this case constitute an exception to the general rule
and the testimony of Mr. Belcher was admissible
as against the objection of privileged communica-
tion.

Mr. Belcher testified that early in April, 1936,
John H. Eicholtz, Katherine Eicholtz and Rose
(Grunewald) came to his office, that at the request
of Mr. Eicholtz he drew the instrument received in
evidence as his last will and testament, that the
talking was done by both Mr. and Mrs. Eicholtz,
that they discussed "pro and con" for about an
hour, asking him questions. He testified:

"*Q.*   *   *   *   In the period that you have repre-
sented Mr. and Mrs. Eicholtz, Sr., or either of them,
did you ever hear any talk or discussion of a mutual
will?
"*A.*   Yes.   *   *   *
"*Q.*   Did you ever hear any talk or discussion of
a reciprocal will?
"*A.*   No.
"*Q.*   Or a joint will?
"*A.*   Oh, joint will, yes.
"*Q.*   And what was that discussion and when was
it?
"*A.*   When the two came to my office the first
time in regard to the will, they had a will that both
had signed. They called it either a mutual or joint
will, and they read it over, or I read it, and they
didn't want it to continue, and Mr. Eicholtz, him-
self, tore it up.   *   *   *
"*A.*   They said they didn't care to continue with
that, and wanted me to draw another one and Mr.
Eicholtz took it and tore it up in my presence.
"*Q.*   Excepting on that occasion, did you ever
hear any talk in the presence of either Mr. and Mrs.
Eicholtz or either of them, of a joint or mutual will?

"*A.* No, never.
"*Q.* And on that occasion they tore one up?
"*A.* They did."

He further testified:

"*A.* I told them that the property held jointly would not be governed by the will, but would go to the survivor, and Mr. Eicholtz said that he wanted his will drawn. Mrs. Eicholtz said she wasn't ready to have it drawn, she didn't know whether she would have a will at all, but if she did, she would come back later, but Mr. Eicholtz told me what he wanted, excepting about the one to put in as executor. * * * He said he wanted Rose, and I told him he had better think it over and call me up, and he did call me up, in person a few days later and said that he wanted Rose. * * * I drew the will. Then a week later, Mr. Eicholtz came into my office with Rose. I saw him sign this document. I am one of the witnesses, the other was the secretary of Mr. Rosenberg. We were officing together at the time. At that time Mrs. Eicholtz said that she was not ready to make her will yet, and she didn't know whether she would make one or not. * * * About a year later she came to my office. Rose was with her. I had some talk about executing a will with Katherine Eicholtz, the mother. She said that she had made up her mind and she wanted to have a will and she also asked me the same question, or the substance of what she did before, about the title to property held jointly, whether it would be covered by the will or go to the surviving party. I told her it wouldn't come under the will, it would go to the surviving party. * * * She said that she wanted everything that she had to go to her husband and that he was to use it during his life—do what he pleased with it, and at his death she wanted it divided—whatever was left to go to the children. I did prepare such a will for her. Mr. Eicholtz, the husband, was not even there at that time. Wayne

county probate file No. 276498 is the will that I prepared for Mrs. Katherine Eicholtz on that occasion. I saw her sign that paper. I am one of the witnesses to that paper, the other one was a Miss Smith.''

About a year later, John H. Eicholtz and Katherine Eicholtz again went to Mr. Belcher's office, and at their request he prepared codicils to each of their wills, and again Mr. Belcher acted as a subscribing witness. While he was not directed to use identical language in both wills, also in the codicils, he chose to do so and this was done except as to the appointment of executor. In their wills each named the other as coexecutor with Rose Grunewald. In their codicils each named Rose Grunewald sole executrix.

Katherine Eicholtz died in 1939, her will and codicil were admitted to probate, Rose Grunewald appointed executrix and the estate was fully administered and closed. Her property was not sufficient to pay her debts and the charges and expenses of administration. Mr. Eicholtz took the property through sale by a probate court order and paid in full. John H. Eicholtz died in June, 1943, his will and codicil were duly admitted to probate, Rose Grunewald appointed as executrix and the estate is still in course of administration.

The testimony adduced by plaintiffs in support of their claim of an oral agreement to make mutual reciprocal wills, binding on the survivor, is meager. Admittedly the wills were phrased in identical language except as to appointment of executor. However, the mere fact alone that two identical wills are made by husband and wife does not suffice to establish an oral agreement to make mutual reciprocal wills, each to be binding on the other as survivor.

''It is contract to make joint and mutual will, and not will itself, that is irrevocable by survivor after

death of one party to it." *Keasey* v. *Engles* (syllabus), 259 Mich. 178.

Nor is this a case where husband and wife have executed a single joint and mutual will making a joint disposition of their property, as in *Sage* v. *Sage,* 230 Mich. 477, and *Keasey* v. *Engles, supra.*

John H. Eicholtz and Katherine Eicholtz each left his or her property to the survivor, if living. Most, if not all, of their real estate was held as tenants by the entirety, and some of it was conveyed by them during their lifetime, after the wills were made. Besides the mere fact that John H. Eicholtz and Katherine Eicholtz had made identical wills and codicils, plaintiffs, to support their claim of an oral agreement between John H. Eicholtz and Katherine Eicholtz to make mutual reciprocal wills, binding on the survivor, produced a witness who testified that Mrs. Eicholtz had said they both had their will drawn,

"and she said that they should stay till they both were gone and they should each child have their share of what was left. * * * Well, I used to run over there quite often and we got together talking a lot and she said then she was glad they had their will, and that the children would all be treated alike after."

Another witness for plaintiffs testified to a conversation with Mr. Eicholtz:

"*A.* Well, I said he just said that they had their will and that everything should go equal with the children and that is about all I know.

"*Q.* Did he say anything with reference to what would happen to the property if he died first or she died first?

"*A.* No, he didn't—well, if she died—if he died first, why it would be hers.

"*Q.* Then did he say anything if she died first?

"*A.* Why, it would be all his.

"*Q.* It would be his?

"*A.* Sure.

"*Q.* Then. did he say when they both died what would happen to it?

"*A.* Well, it had to be divided up equally.

"*Q.* Among the children?

"*A.* Among the children."

Later, this testimony as to the construction to be placed on the wills and as to what the wills provided, was stricken out by the trial court, without objection.

Another witness for plaintiff testified:

"*Q.* Did he say anything then in reference to the will that he had drawn and his wife had drawn?
\* \* \*

"*Q.* Did he say anything on that occasion about a will that he had drawn and the will Mrs. Eicholtz had drawn? \* \* \*

"*A.* Yes, he did. He said he wanted each one of his children to share alike in what was left.

"*Q.* Did he say anything then in reference to the will that he had drawn and his wife had drawn?
\* \* \*

"*A.* Yes, he said they both made a will just alike and said if he passed away first, she was to have it, and then the children, and he always emphasized that, that his children were to each have a share, an equal share, that he didn't want to favor any of them."

The fact is that Mr. and Mrs. Eicholtz had each made a separate will, at different times, not "a will" as testified to by these witnesses.

"In suit to enjoin revocation of a will of living surviving parent leaving homestead to plaintiff, a son, evidence, consisting of expressions of intention of each parent to leave it to him, made before simultaneous execution of their wills *held,* insufficient to

sustain his burden of proof that there was an agreement between the parents that neither would change the will without the consent of the other." *Elmer* v. *Elmer* (syllabus), 271 Mich. 517, 518.

"Before specific performance of an alleged contract to leave property by will or otherwise may be decreed, a contract must be shown, for regardless of the equities in a case, the court cannot make a contract for the parties when none exists.

"One seeking specific performance of a contract to leave property by will has the burden of proving the contract." *In re Cramer's Estate* (syllabi), 296 Mich. 44.

"Testimony concerning oral agreement to leave property by will must be viewed with great caution because of frailties of memory, improbability of repeating precise language of deceased and expressing full state of mind of such person, and greater weight is given to the acts of alleged contracting parties.

"While the required proof in a suit for specific performance of an alleged oral agreement to leave property by will is the same as in civil cases generally, the nature of the litigation is such as to require courts to scrutinize the testimony closely and to weigh it and test it in the light of all circumstances disclosed by the record since estates of deceased persons should not be diverted in consequence of such agreements except upon proof which satisfies the mind and conscience of the court that the contract was made as claimed." *Kerns* v. *Kerns* (syllabi), 303 Mich. 23.

"When the testimony in a chancery case is conflicting, the findings of the trial court will be upheld in the absence of a definite showing that a contrary result should have been reached." *Lau* v. *Lau* (syllabus), 304 Mich. 218.

We are in accord with the finding of the trial court, embodied in the decree entered in the circuit

court, that plaintiffs failed to sustain the burden of proving an oral agreement between John H. Eicholtz and his wife Katherine to execute mutual reciprocal or joint wills, to be binding on each of them and the survivor.

In addition to seeking specific performance of an alleged oral agreement to make a joint will, plaintiffs seek to set aside various conveyances and transfers made by Mr. Eicholtz after the death of his wife, by means of which he distributed among his children most of his property, both real and personal. This claim is mainly directed against Rose Grunewald. Plaintiffs allege that Rose Grunewald obtained a larger proportion of his property by undue influence, fraud, coercion and duress perpetrated by her against her father. The record is completely devoid of any adequate convincing proof to sustain such a claim. The trial court, seeing and hearing the witnesses, and in a better position to decide this issue, signed a decree embodying conclusions in which we concur, as follows:

"Plaintiffs' counsel in open court in the presence and hearing of the plaintiffs having repeatedly and expressly stated that he would offer no proof to support the averments in the bill of complaint on the claims of incompetency of John H. Eicholtz, deceased, fraud, duress and overreaching in the dealings between Rose Grunewald and the said John H. Eicholtz, deceased, and there being no proof in support thereof, there being proof of the competency of said John H. Eicholtz, deceased, and of the fairness of the dealings by Rose Grunewald with him, and there being no proof as required by law of any agreement or understanding whatever between John H. Eicholtz, deceased, and Katherine Eicholtz, deceased, husband and wife, in their lifetime, for the execution by them of mutual, reciprocal, joint or identical wills or codicils, and the plaintiffs not

having sustained in any particular their burden of proof in that regard, it is ordered, adjudged and decreed that none of the plaintiffs are entitled to have any relief whatever in this cause on their claim of an agreement between their parents to execute mutual, reciprocal, joint or identical wills or on their claim of incompetence of John H. Eicholtz, their father, or of fraud, duress or overreaching on the part of Rose Grunewald in her dealings with their father.''

Notwithstanding the decree entered as aforesaid in the circuit court, the circuit judge ''in the exercise of the general equity powers of this court'' proceeded to enter in the decree that the defendant Rose Grunewald must either convey back to the John H. Eicholtz estate certain real estate conveyed to her by her father, or pay $2,000 to the estate; and the decree further provides that every gift, or conveyance of either real or personal property, accounts payable, et cetera, by both John H. Eicholtz and Katherine Eicholtz during their lifetime are ''affirmed and confirmed'' except as to certain conveyances, and expressly decrees as valid three certain warranty deeds executed by John H. Eicholtz as survivor of himself and wife, to certain other parties, some of whom are not parties in the case. The decree purports to quiet title as to the lands described in these conveyances. It also provides that:

''This final decree shall be and constitute such mutual release and discharge, by, between and among the brothers and sisters who are the children of John H. Eicholtz and Katherine Eicholtz, both deceased, their several heirs, representatives and assigns in all things and matters growing out of, relating to or deriving from the property, funds and interests of their said parents.''

Certain of the defendants have cross-appealed on the ground that the circuit court, after finding that there was no oral agreement to make binding mutual reciprocal wills, and that there was no mental incompetence, undue influence, fraud, coercion, duress or overreaching established, had no power to intermeddle in the distribution of the property of John H. Eicholtz.

In view of the conclusions reached by the trial court, and affirmed here, that plaintiffs have failed to prove an oral agreement to make mutual wills, binding on both parties, and also have failed to establish any ground for setting aside the conveyances and transfers made by John H. Eicholtz during his lifetime, there would seem to be no basis for any decree other than one to dismiss the bill of complaint. The court had no power to make some other distribution of the property of John H. Eicholtz differing from the distribution lawfully made by him during his lifetime by conveyances and by his will.

Nothing in the pleadings or the issues before the court justifies a decree which purports to clear the title claimed to have been conveyed by John H. Eicholtz during his lifetime to Paul H. Ericson and Lila B. Ericson, his wife, designated as parcel No. 1 and parcel No. 2, and the conveyance designated as parcel No. 3, a warranty deed by John Eicholtz (plaintiff herein) and his wife to one Dennis Tzurupa and Anastasia Tzurupa, husband and wife. The only ground on which these provisions in the decree can be affirmed must rest on a stipulation filed in the court below, as follows:·

"It is hereby stipulated and agreed by and among the parties to this cause by their attorneys respectively that the relief granted in the final decree in the above-entitled cause to Paul Ericson and Lila B. Ericson, his wife, and to Dennis Tzurupa and An-

astasia Tzurupa, his wife, defendants and cross-plaintiffs herein, shall remain final and binding and not in the least disturbed, beclouded or affected by any appeal or cross-appeal from the said final decree herein, and the foregoing stipulation is executed only because the parties appealing desire to, and they do hereby stipulate and agree that the pleadings and proofs relating solely to the said parties Ericson and Tzurupa may be omitted from the record on appeal herein or from any bill of exceptions settled herein, and that in the event any of the parties appealing or responding to an appeal desire to use pleadings or proofs relating solely to said parties Ericson or Tzurupa they may incorporate the same from a certified copy or transcript in a printed additional record appended to their brief herein.''

To the extent that the persons affected by this stipulation are before the court as parties in the case, we are willing that so much of the decree as is covered by the stipulation may be affirmed. The issue in that regard is not before us and need not be passed upon.

A decree may be taken otherwise dismissing the bill of complaint, with costs to cross-appellants.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, NORTH, and STARR, JJ., concurred.