SCHONDELMAYER *v.* SCHONDELMAYER.

1. SPECIFIC PERFORMANCE—CONTRACT TO MAKE JOINT MUTUAL WILL
   —BASIC ISSUE.

   In a suit for specific performance of an alleged agreement be-
   tween spouses to make a joint mutual will, the basic issue is
   whether or not the testamentary instrument involved was
   executed as the joint mutual will by the spouses in accordance
   with an agreement between them that it was their joint
   mutual will.

2. WILLS—CONTRACT TO MAKE JOINT MUTUAL WILL—REVOCATION.

   The mere fact that two identical wills are made by husband and
   wife does not suffice to establish an oral agreement to make
   binding mutual reciprocal wills as it is the contract to make
   a joint and mutual will that is irrevocable by the survivor
   after the death of one party to it.

3. SAME—JOINT MUTUAL WILL—REVOCATION—CONTRACTS.

   While generally a mutual or joint will may be revoked by either
   of the comakers if not made in pursuance of a contract, where
   there is such a contract, it is generally irrevocable when,
   upon the death of one spouse, the survivor avails himself of
   the benefits of the devise in his favor.

4. SAME—JOINT MUTUAL WILL—CONTRACTS—EVIDENCE.

   A recital in a joint mutual will that it was a contract between
   the signers to make the instrument their joint mutual will is
   competent evidence of such contract.

5. SAME—CONTRACT TO MAKE MUTUAL WILLS—EVIDENCE.

   A contract incorporating the mutual will of the parties is suf-
   ficient evidence of the agreement in pursuance of which the
   will was executed.

6. SAME—MUTUAL WILL—ENFORCEMENT UPON DEATH OF ONE PARTY.

   Upon the death of one party to a contract to make mutual will,
   the agreement underlying the will becomes irrevocable and
   right of action to enforce it vested in the beneficiaries.

7. SPECIFIC PERFORMANCE—CONTRACT TO MAKE JOINT MUTUAL WILLS
—EXECUTION—EVIDENCE.
    In suit for specific performance of an·agreement between de-
    fendant and her late husband to make a joint mutual will,
    evidence. *held*, to support finding that defendant had executed
    the will, knowing it to be such an instrument.

8. JUDGMENT—RES JUDICATA—SPECIFIC PERFORMANCE—JOINT MU-
TUAL WILL—VALIDITY.
    The determination, in a suit for specific performance, that de-
    fendant had executed a joint mutual will which became ir-
    revocable upon death of her husband because of contract in-
    volved is not *res judicata* of the validity or invalidity of the
    will should it be contested in some other proceedings on
    grounds not involved in the instant suit.

9. WILLS—CONTRACT TO MAKE PARTICULAR DISPOSITION.
    A person may enter into a valid agreement binding himself to
    make a particular testamentary disposition of his property.

10. SAME—CONTRACT TO MAKE JOINT MUTUAL WILL—SPECIFIC PER-
FORMANCE—FRAUD.
    Where, pursuant to a mutual agreement involving the disposition
    of lands, a father and mother made a joint mutual will, the
    father died leaving his will. unrevoked, and the mother ac-
    cepted provisions made in her favor therein, equity will decree
    performance by the mother, or take such steps as will prevent
    her from violating her part of the contract in fraud of the
    rights of parties interested therein.

Appeal from Barry; McDonald (Archie D.), J.
Submitted January 7, 1948. (Docket No. 22, Calen-
dar No. 43,842.) Decided April 5, 1948.

Bill by Corna Schondelmayer against Cathrin
Schondelmayer for specific performance of a con-
tract contained in a joint and mutual will. Decree
for plaintiff. Defendant appeals. Colin P. Camp-
bell, special administrator of the estate of Cathrin
Schondelmayer, deceased, substituted for Cathrin
Schondelmayer. Affirmed.

*Paul E. Siegel,* for plaintiff.

*Adelbert Cortright,* for defendant.

NORTH, J.  Corna Schondelmayer, plaintiff, is the
son of Cathrin Schondelmayer and her deceased hus-
band, Charles Schondelmayer.  The relief sought is
specific performance by defendant of an alleged
agreement between her and her husband to make a
joint mutual will, and injunctive relief whereby de-
fendant would be restrained from disposing of prop-
erty in violation of the terms of the alleged joint
mutual will.  Defendant and her husband signed the
alleged joint mutual will, and so far as appears on
the face of the instrument it was executed with all
requisite formalities.  The trial court granted the
injunctive relief sought after having first adjudged
and decreed as follows:

"That on the 14th day of March, 1942, Charles
Schondelmayer, now deceased, and the said. defend-
ant, Cathrin Schondelmayer, executed a joint and
mutual will which contains an agreement therein for
the executing of a joint and mutual will, and that
said will was duly executed and witnessed, and the
court now finds that said will is a valid will, and that
on the death of Charles Schondelmayer, said will be-
came irrevocable by the survivor, defendant in this
cause, Cathrin Schondelmayer."

The defendant appealed.  Subsequent to her ap-
peal to this Court Mrs. Cathrin Schondelmayer died,
and the appeal is now being prosecuted by the ad-
ministrator of her estate who has been substituted
of record as defendant.  Notwithstanding such sub-
stitution we herein refer to Mrs. Schondelmayer as
defendant and appellant.

Other than above noted, the following statement
of the factual background of this litigation is suf-
ficient for decision in the instant case.  At the time
of making the alleged joint mutual will the issue of
the marriage of Charles and Cathrin Schondelmayer
consisted of three adult sons.  By the terms of the

testamentary instrument their son Conrad was to receive a designated farm subject to certain conditions; a like provision as to another farm was made for their son Carner; and Corna, plaintiff herein, was to receive other designated real estate which included the home farm of Mr. and Mrs. Schondelmayer, and he was also to receive the balance of the estate of every description, subject however to the provision in the will that: "The funeral expenses of the survivor, just debts, cost of markers and the expense of administration shall be paid out of his, Corna Schondelmayer, share of the estate." The foregoing provisions of the will were made subject to ownership of all their property in the survivor of the testators. Title to the real property which the three sons were to receive was held jointly in entireties by Charles and Cathrin.

Subsequent to the execution of the testamentary instrument, the plaintiff herein and his wife moved onto the home farm of his parents. About a year later, February 11, 1945, Charles Schondelmayer died. Thereafter Cathrin continued to live on the home farm with Corna and his family until Thanksgiving, 1946. She then went to live with her son Carner and was still living with him when this suit was heard in the trial court. Subsequent to Charles' demise the testamentary instrument here in suit was read to the family. Later the instrument was received in probate court as the last will and testament of Charles Schondelmayer. However, the widow gave notice of her election to take under the statute * rather than under the will. Her election so to do was accepted and approved by the probate

---

* See Act No. 288, chap. 2, § 69, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2[69], Stat. Ann. 1947 Cum. Supp. § 27.3178 [139]).—REPORTER.

court, but her right to so elect was challenged by Corna and that issue is still pending on appeal to the circuit court.

About a year and a half after Charles Schondelmayer's death, trouble arose in the household occupied by Cathrin and her son Corna. Ultimately litigation developed incident to which there were three suits. One of these suits was brought by Cathrin against Corna, one by Corna against Cathrin and his two brothers, and the other was incident to the probate court's allowance of Cathrin's election in her husband's estate to take under the statute rather than under the will, from which holding of the probate court Corna appealed to the circuit court as just above noted. However, we are not materially concerned with the litigation which preceded the instant suit brought by Corna in January, 1947, except as the record thus discloses the hostile relations existing between plaintiff and defendant herein and, hence, has a bearing upon their credibility as witnesses in this case.

Because it is somewhat pertinent to decision herein, it may also be noted that Cathrin, to some extent, accepted the benefits which accrued to her under the will. Shortly after the death of her husband, at her request, Corna took $4,000 from the safe in the home, and with the exception of $100, the sum so withdrawn from the safe, wherein her husband kept the money, was divided by her equally between the three sons. Cathrin also received $1,230 in payment of a mortgage, and divided this between her sons Carner and Conrad. And after her husband's death she ceased to collect from Carner and Conrad the portion of the milk checks which prior to his death seemed to have been paid to Charles, and which items evidently were a part of his estate.

Of the four questions presented in appellant's brief the first two are as follows:

"1. Was the will executed March 14, 1942, by Cathrin Schondelmayer jointly with Charles Schondelmayer, a valid will as to Cathrin Schondelmayer?

"2. Was the will executed March 14, 1942, irrevocable on the death of Charles Schondelmayer, or at the time the will was filed?"

The above questions do not, with strict accuracy, present the basic issue which will control decision herein. Instead that issue is this: Was the testamentary instrument here involved executed as their joint mutual will by Cathrin and her husband in accordance with an agreement between them that it was their joint mutual will? In *Eicholtz* v. *Grunewald,* 313 Mich. 666, we said:

"However, the mere fact alone that two identical wills are made by husband and wife does not suffice to establish an oral agreement to make mutual reciprocal wills, each to be binding on the other.   *   *   *

" 'It is contract to make joint and mutual will, not will itself, that is irrevocable by survivor after death of one party to it.' *Keasey* v. *Engles* (syllabus), 259 Mich. 178."

And in Thompson on Wills (3d Ed.), p. 238, § 153, the author states:

"As a general rule, a mutual or joint will may be revoked by either of the comakers, provided it was not made in pursuance of a contract. But where such will has been executed in pursuance of a compact or agreement entered into by the testators to devise their separate property to certain designated beneficiaries, subject to a life estate or other interest in the survivor, it is generally held irrevocable when, upon the death of one, the survivor avails himself of the benefits of the devise in his favor."

On this appeal we must first determine whether under the record the trial court was correct in decreeing that Charles and Cathrin Schondelmayer "executed a joint and mutual will *which contains an agreement therein for the executing of a joint and mutual will.*"

We are not in accord with appellant's contention that a recital in the will itself of the agreement by the parties to constitute the instrument their joint mutual will is not competent evidence of such contract. The will involved in the instant case contains the following:

"It is hereby agreed that whichever is deceased first, be it Charles Schondelmayer or Cathrin Schondelmayer, the survivor shall pay the funeral expenses and all just debts of either or both, and shall thereafter become the sole owner of any and all property owned by either or both of them. The said survivor shall live as he or she has been accustomed, using so much of the income or principal as may be necessary for his or her comfort of [or?] convenience.

"This instrument is hereby declared to be the last will and testament of either, as the said survivor, and after the decease of the said survivor, the estate shall be divided as follows."

Immediately following the foregoing, the will contains the provisions for the three sons as above noted. The words just above quoted from the will, which was solemnly executed by the respective parties, must be held to be competent evidence of an understanding and agreement between the parties that after the death of one of them the will should be and remain the last will and testament of the survivor in accordance with the terms of which disposition should be made of the estate.

"A contract incorporating the mutual will of the parties is sufficient evidence of the agreement in pursuance of which the will was executed.

"Upon the death of one party to a contract to make mutual will, the agreement underlying the will becomes irrevocable and right of action to enforce it vested in the beneficiaries." *Getchell* v. *Tinker* (syllabi), 291 Mich. 267.

But this record contains the testimony of Cathrin Schondelmayer wherein she states in substance that when she signed the instrument here in suit she did not know its contents. Obviously if such were the fact, Cathrin did not know of the contractual provision of the instrument just above quoted, and in that event there would not have been a meeting of minds between her and her husband and a valid contract to make a joint mutual will could not have resulted. In this respect the record presents a controlling issue of fact. In consequence thereof we review Cathrin's testimony and other testimony on this phase of the case quite in detail. The following is from Cathrin's testimony:

"Charlie never talked to me about drawing a will prior to his death. I never entered into any agreement with my husband, Charlie, in regard to making a will for any certain or partial disposition of the property. There were papers signed and witnessed by people by the name of Fish, but I do not know what they were. I was not informed that I was signing a will at that time. * * *

"When Mr. and Mrs. Fish came to my house, I signed the paper but I did not know what I was signing. I did not read it; it was closed up so that I could not read it. I did not ask to read it, nor object to signing it. Charlie did not tell me what it was. * * *

"I did not know that there was a will signed by the Fish's. * * *

"The will signed by Mr. and Mrs. Fish was read (to members of the family) after my husband's death by Mr. Lynn.    *    *    *

"I will tell you the truth, I hated Lillian Schondelmayer (Corna's wife).    *    *    *    I hated Lillian Schondelmayer from the time my boy married her. I tried to get along with her, some, but there was no use trying.    *    *    *    She often called me an old liar (and the record discloses Cathrin returned the compliment in like terms). We did not speak to each other for at least a year or more.    *    *    *

"Q. Is it your claim that you have a right to dispose of the property in Middleville (the home farm) by will?

"A. I think I have.    *    *    *    I threatened to sell the farm home last fall after trouble arose between Corna and I; and I am going to sell it, too."

Among other circumstances disclosed by the record tending to establish the incredibility of Cathrin's testimony, we note the following:

Mrs. Neva Fish, who together with her husband, Harry J. Fish, were witnesses to the execution of the will, testified: "Mr. Schondelmayer asked us to come up and witness *them sign their will.*" While this statement was not made in defendant's presence, nonetheless it is somewhat indicative that Mr. Schondelmayer was not seeking to suppress knowledge of the fact that the testamentary instrument was a joint will. And nothing appears in this record tending to disclose a reason why Charles Schondelmayer might wish to keep from his wife full knowledge concerning the nature and contents of the will. The witness also testified:

"There was no conversation that I recall, about the will when I signed it.    *    *    *    Neither was there anything said that indicated Cathrin Schondelmayer did not know it was a will she was signing.    *    *    *    I would have known it was a will

from the form. \* \* \* I do not recall as anything was said, *they* simply got the papers around and signed them and we witnessed them. \* \* \*

"*The Court:* Did Charlie Schondelmayer have the will in his pocket or where did it come from?

"*A.* They had it at the home."

The other subscribing witness, Harry J. Fish, gave testimony much to the same effect as that above quoted, and further testified:

"They had some sort of a table or desk (in the dining room where the will was executed) and after he (Charles Schondelmayer) got *his papers all spread out* and all ready to sign, he signed them, as I recall, first. I do not know where he got the document."

The foregoing testimony conflicts with defendant's testimony that when the will was signed, "it was closed up so that I could not read it." Nor, at least inferentially, does it check with defendant's testimony, "There were papers signed and witnessed, \* \* \* but I do not know what they were."

While advanced in years, Cathrin Schondelmayer, at least up to the time of her husband's death, was an active woman. In her household affairs she informed her husband of needed supplies and he purchased them. She joined with him in counting nearly $5,000 which they had in the home, and in putting the money away for safe keeping. The record contains a lease in the execution of which Cathrin joined her husband. She had signed an earlier will which she testified was read to her and which was witnessed by two persons. While the record does not disclose who drafted the will here in suit, the instrument was there in the Schondelmayer household at the time Mr. and Mrs. Fish came to witness its execution, and Mrs. Fish testi-

fied: "*They* simply got the papers around and signed them and we witnessed them." It would be difficult in considering this record as a whole to conclude that Cathrin did not know the nature of the transaction at the time the will was executed and the occasion for the presence of Mr. and Mrs. Fish, notwithstanding Cathrin's testimony: "There were papers signed and witnessed by people by the name of Fish, but I do not know what they were." The very paper Cathrin signed contained the usual witnessing clause wherein it is stated:

"On this 14th day of March, A.D., 1942, Charles Schondelmayer and Cathrin Schondelmayer * * * signed the foregoing instrument in our presence, and declared it to be their last 'will and testament."

Further, when subsequent to the death of Charles Schondelmayer, the will was read to the members of the family, Cathrin neither expressed disapproval nor surprise at the contractual provisions contained therein and hereinbefore quoted. Nor did she make any claim that she did not previously know that she and her husband had executed such a will. Her contention in that respect seems to have been an aftermath of the development of hostile relations between Cathrin and Corna and his wife.

Our review of this record brings the conclusion that the trial judge was correct in determining that the will in suit was the joint mutual will of Charles and Cathrin Schondelmayer, executed by them pursuant to their agreement so to do, and in consequence of the death of Charles Schondelmayer it was thereafter not subject to revocation. The decree entered in the circuit court is affirmed in the above respect, and also as to the injunctive relief therein granted. However our decision herein is not

*res judicata* of the validity or invalidity of the will should it be contested in some other proceedings on grounds not involved in the instant case.

In a case wherein from a legal viewpoint the factual background was strikingly similar, we said:

"There is no doubt but it is competent for a person to make a valid agreement binding himself to make a particular disposition of his property by last will and testament. (Citing numerous cases. See, also, *Wright* v. *Wright,* 99 Mich. 170 [23 L. R. A. 196]; *Winchell* v. *Mixter,* 316 Mich. 151, 163.)
\* \* \*

"The nonfulfillment of this contract upon the part of Ann Carmichael (the surviving widow) would be a fraud which equity will not allow. Therefore it will decree the performance of the agreement upon Ann Carmichael, or take such steps as shall be necessary to prevent her from violating her part of the contract in fraud of the rights of these complainants (beneficiaries under the will)." *Carmichael* v. *Carmichael,* 72 Mich. 76, 85 (1 L. R. A. 596, 16 Am. St. Rep. 528).

Because of our holding hereinbefore, and because the death of Cathrin Schondelmayer while this appeal has been pending has rendered certain aspects of the case moot, there is no occasion for reviewing other questions presented in appellant's brief. In view of the circumstances just noted, a decree in accordance with our decision herein should be entered in this Court affirming the trial court's decree in the particulars noted. Appellee will have costs of both courts.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.