ROGERS v ROGERS

Docket No. 72154. Submitted May 3, 1984, at Grand Rapids.—Decided
    July 9, 1984. Leave to appeal applied for.

    Charles H. and Faith B. Rogers were married in 1938. Each had
    three children from their respective prior marriages. In 1956,
    they purchased a 39-acre farm on land contract. In 1967, they
    received a warranty deed on the property. In 1961, they exe-
    cuted a joint will providing that the survivor of the two would
    receive all property, real, personal, or mixed, of the other for
    the survivor's use as long as he or she lived. At the death of the
    survivor, the property was to be split equally among the six
    children. Charles H. Rogers died in 1969. Apparently, the will
    was not probated. In 1981, Faith B. Rogers conveyed the 39-
    acre farm to her son, Robert Delaphiano, and his wife for $1
    and love and affection. Robert C. Rogers, a son of Charles, and
    his wife, Vada B. Rogers, filed suit against Faith Rogers and
    Robert and Patricia Delaphiano in Eaton Circuit Court, claim-
    ing as devisees to a one-sixth share of the farm that Faith
    Rogers violated the terms of the joint will by conveying the
    farm to her son. Plaintiffs sought to have the conveyance set
    aside and to enjoin Faith Rogers from making any further
    conveyances of the farm, other than of her life estate therein.
    The court, Richard M. Shuster, J., found that property held by
    Charles and Faith Rogers as tenants by the entireties was
    outside of the joint and mutual will, was not covered by the
    will, and did not pass by virtue of it. Therefore, Faith Rogers
    was entitled to transfer and convey it to her son and daughter-

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 79 Am Jur 2d, Wills § 770.
    Establishment and effect, after death of one of the makers of joint,
    mutual, or reciprocal will, of agreement not to revoke will. 17
    ALR4th 167.
[2, 3] 79 Am Jur 2d, Wills §§ 808, 810.
[3] 79 Am Jur 2d, Wills §§ 790, 809.
[4] 79 Am Jur 2d, Wills §§ 762, 764, 792.
[5-7] 41 Am Jur 2d, Husband and Wife § 55.
[6] 41 Am Jur 2d, Husband and Wife § 60.
[7] 41 Am Jur 2d, Husband and Wife § 72.

in-law. The trial court ruled that plaintiffs had no cause of action. Plaintiffs appeal. *Held:*

1. The joint and mutual will constituted and contained a contract between Charles H. and Faith B. Rogers whereby, after the death of either of them, the survivor would be bound by the terms of the will.

2. By placing the ownership of the farm in their two names as tenants by the entireties, Charles and Faith Rogers intended that the farm would be owned solely by the survivor of the two. The farm passed to Faith by operation of law upon Charles's death, and she was free to dispose of it in any way she desired.

Affirmed.

1. WILLS — JOINT WILLS — CONTRACTS.

A will, although jointly executed by two persons, is not a contract since it is subject to change and represents simply a statement of the wishes of the testators as they exist at the time of execution; the terms of, or the benefits from, a will, however, may be the subject of a contract between the persons executing it.

2. WILLS — JOINT WILLS — CONTRACTS.

A will jointly executed by two testators containing reciprocal bequests may be, under some circumstances, sufficient evidence to establish a contract to make the testamentary dispositions contained in such a will.

3. WILLS — JOINT WILLS — CONTRACTS.

A will which is executed by two testators pursuant to an agreement and is reciprocal in its bequests creates a contractual obligation, but the mere fact that two identical wills are made by a husband and wife does not suffice to establish an oral agreement to make mutual reciprocal wills, each binding on the other; it is the contract to make a joint and mutual will, not the will itself, that is irrevocable by the survivor after the death of the other party to it.

4. WILLS — JOINT WILLS — CONTRACTS.

A mutual or joint will may generally be revoked by either of the co-makers, provided it was not made in pursuance of a contract; however, where such a will has been executed in pursuance of a contract or agreement entered into by the testators to devise their separate property to certain designated beneficiaries, subject to a life estate or other interest in the survivor, it is generally held irrevocable where, upon the death of one, the survivor avails himself of the benefits of the devise in his favor.

5. HUSBAND AND WIFE — TENANTS BY THE ENTIRETY.

A husband and wife who own property as tenants by the entireties are considered as one person; each spouse is considered to own the whole and, therefore, is entitled to the enjoyment of the entirety and to survivorship; neither spouse acting alone can alienate or encumber to a third person an interest in the fee of lands so held, neither has an individual, separate interest in the property, and neither has an interest which may be conveyed, encumbered, or alienated without the consent of the other.

6. TENANTS BY THE ENTIRETY — UNITY OF PERSONS, TIME, TITLE, INTEREST, AND POSSESSION.

Tenancies by the entireties can only be created by a written instrument of conveyance which produces unity of persons, time, title, interest, and possession.

7. HUSBAND AND WIFE — TENANTS BY THE ENTIRETY — WILLS.

Property owned by a husband and wife as tenants by the entireties passes to the survivor by operation of law upon the death of the first of them.

*G. Randall Price,* for plaintiffs.

*David H. Tripp,* for defendants.

Before: BEASLEY, P.J., and ALLEN and M. B. BREIGHNER,* JJ.

BEASLEY, P.J. Plaintiffs, Robert C. Rogers and Vada B. Rogers, his wife, appeal as a matter of right from a judgment entered in favor of defendants, Faith B. Rogers, Robert C. Delaphiano and Patricia A. Delaphiano, his wife.

In the judgment, the trial court held that a deed executed and delivered by defendant-appellee, Faith B. Rogers, to her son and daughter-in-law, Robert C. and Patricia A. Delaphiano, on September 4, 1981, conveying a 39-acre farm in Bellevue Township, Eaton County, was valid. The trial court found that the joint and mutual will of

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

Charles H. Rogers and Faith B. Rogers, dated April 20, 1961, did not prevent her from transferring this property for the reason that it became her sole and separate property as surviving tenant by the entirety upon the death of her husband, Charles H. Rogers, on March 8, 1969.

Charles H. and Faith B. Rogers were married in 1938, he being some 20 years her senior. The marriage was a second one for each, and each had three children from their respective prior marriages. No children were born of their marriage. On April 23, 1956, Charles and Faith Rogers entered into a land contract for the purchase of a 39-acre farm in Bellevue Township, Eaton County, which real proeprty is the subject matter of this litigation. The land contract recited that as purchasers they would take the property as husband and wife, tenants by the entireties, which conveyance occurred when a warranty deed, pursuant to the land contract running to them, was delivered on June 15, 1976.

The April 20, 1961, joint will of Charles H. and Faith B. Rogers provides in part:

"Second, it is the will and desire of each of us, and the mutual wish and desire of both of us, that on the death of either of us, all of the property of the deceased party, whether real, personal or mixed, shall become the sole and separate property of the surviving party for his or her use so long as the survivor shall live.

"Third, upon the decease of the survivor of us, we give, devise and bequeath any remainder and residue of our property to the following people, in equal shares, share and share alike, except each husband and wife will take one share:

"Mr. and Mrs. John Delaphiano of Bellevue, Michigan,

"Mr. Robert C. Delaphianio [sic] of Battle Creek, Michigan,

"Mr. and Mrs. Kenneth Hill of R. 2, Bellevue, Michigan,

"Mr. and Mrs. Robert C. Rogers, of 105 Cherokee, Battle Creek, Michigan,

"Mr. Andrew C. Rogers of Florida, and

"Mr. Donald C. Rogers of California."

On March 8, 1969, Charles H. Rogers died, and the joint will, which had been placed in the custody of the Barry County Probate Court, was delivered to Eaton County. There is not any indication that any probate proceedings were had.

On September 4, 1981, "in consideration of $1 and love and affection", Faith B. Rogers delivered a deed to the farm in Eaton County to her son, defendant Robert Delaphiano and his wife, defendant Patricia A. Delaphiano.

On September 29, 1981, plaintiffs, Robert C. Rogers (a son of Charles) and Vada B. Rogers, the wife of Robert C. Rogers, claiming as devisees to a one-sixth share of the farm, started suit in Eaton County, alleging that when his stepmother, Faith B. Rogers, conveyed the farm to the defendants Delaphiano, she violated the terms of the will which provided for only a life estate in the survivor and, therefore, breached the contract underlying the will. Plaintiffs sought to have the conveyance to the Delaphianos set aside and to enjoin Faith B. Rogers from making any further conveyances of the farm, other than of her life estate.

After a bench trial on the merits, the trial court ruled that the April 20, 1961, will was a joint and mutual will containing an aspect of contract and covered all of the property that each owned. The trial court held that when Charles Rogers died, a trust was created under the joint and mutual will for the benefit of Faith during her lifetime and, upon her death, the property would pass according

to the residuary provision in the joint and mutual will. However, in its analysis, the trial court also held that with respect to property held by Charles and Faith as tenants by the entireties, such as the farm, it would only be included under the joint and mutual will if the language of the will specifically so provided. The trial court said that property held by Charles and Faith as tenants by the entireties was outside of the joint and mutual will, was not covered by the will and did not pass by virtue of it. Therefore, the trial court concluded that upon Charles's death the farm became the sole and separate property of Faith, as the survivor of the tenancy by the entireties with her husband. As her sole property, she was entitled to transfer and convey it to the Delaphianos. Therefore, the trial court concluded plaintiffs had no cause for action and held in favor of defendants.

A will, although jointly executed by two persons, is not a contract, strictly speaking, since it is subject to change and represents simply a statement of the wishes of the testators as they exist at the time of execution. The terms of, or the benefits from, a will, however, may be the subject of a contract between the persons executing it. Moreover, a will jointly executed by two testators containing reciprocal bequests may be, under some circumstances, sufficient evidence to establish a contract to make the testamentary dispositions contained in such a will.[1]

A will which is executed by two testators pursuant to an agreement and is reciprocal in its bequests creates a contractual obligation;[2] the mere fact alone that two identical wills are made by a

---

[1] 79 Am Jur 2d, Wills, § 770, p 831.

[2] "A will made in conformity with an alleged contract is strong confirmatory proof that such an agreement was entered into; * * *." 94 CJS, Wills, § 113(2), p 870.

husband and wife does not suffice to establish an oral agreement to make mutual reciprocal wills, each binding on the other. It is the contract to make a joint and mutual will, not the will itself, that is irrevocable by the survivor after the death of one of the parties to it.[3]

As a general rule, a mutual or joint will may be revoked by either of the co-makers, provided it was not made in pursuance of a contract. But, where such a will has been executed in pursuance of a contract or agreement entered into by the testators to devise their separate property to certain designated beneficiaries, subject to a life estate or other interest in the survivor, it is generally held irrevocable when, upon the death of one, the survivor avails himself of the benefits of the devise in his favor.[4]

Thus, for the terms of the will to be irrevocable upon the death of one of the parties, an agreement between the parties must be established. The general rule is stated as follows:

"A will jointly executed by two testators may disclose so clearly that it is the product of a contract between them, that the will itself is sufficient evidence to establish the contract."[5]

In *Getchell v Tinker*,[6] a husband and wife who owned property as tenants by the entireties had marital difficulties. They entered into a settlement agreement in which they gave their property to their son. The court found the agreement to be testamentary and to be a joint will. The husband

---

[3] *Eicholtz v Grunewald*, 313 Mich 666; 21 NW2d 914 (1946).

[4] *Schondelmayer v Schondelmayer*, 320 Mich 565; 31 NW2d 721 (1948).

[5] 79 Am Jur 2d, Wills, § 810, p 863.

[6] 291 Mich 267; 289 NW 156 (1939).

died first, and the wife gave a deed to the property
to a third party just prior to her death. The son's
heirs brought an action to set aside the deed and
were successful in the trial court. The Supreme
Court affirmed, saying:

"Paragraph 4 of the instrument of December 11,
1922, above quoted, is clearly testamentary in charac-
ter, and the document in its entirety reveals it to have
been executed pursuant to an agreement between the
parties to dispose of the property involved in this
litigation, in the event of death, in the manner specified
in said paragraph 4. In this particular, it was, in legal
effect, the joint and mutual will of the parties thereto.
Appellant argues that the instrument cannot be con-
strued as a joint and mutual will, claiming that there is
no evidence of an existing agreement to make mutual
wills. A reading of the document in its entirety is
sufficient to disclose the existence of such an agree-
ment. It clearly appears to have been the intention of
the parties to make a contract by the terms of which all
property owned by them was to be disposed of as
provided therein, paragraph 4 to become operative in
the event of death of either party and to stand as a
testamentary disposition of whatever interest one party
might have upon the death of the other. The contract
incorporates therein the mutual will of the parties and
stands as sufficient evidence of the agreement in pur-
suance of which the will was executed."[7]

In *Schondelmayer v Schondelmayer*,[8] a husband
and wife both signed the same will, which made
mutual provisions for each other, and then pro-
vided how their property would be divided among
their three adult sons. After the wife survived, one
of the sons sought specific performance of the
alleged contract in the will and injunctive relief to
prevent the widow from disposing of the joint

[7] 291 Mich 269-270.

[8] *Schondelmayer, supra.*

property, which he claimed he was ultimately supposed to receive. The trial court granted injunctive relief, and the Supreme Court affirmed. The Court considered the following language of the document:

" 'It is hereby agreed that whichever is deceased first, be it Charles Schondelmayer or Cathrin Schondelmayer, the survivor shall pay the funeral expenses and all just debts of either or both, and shall thereafter become the sole owner of any and all property owned by either or both of them. The said survivor shall live as he or she has been accustomed, using so much of the income or principal as may be necessary for his or her comfort of [or?] convenience.

" 'This instrument is hereby declared to be the last will and testament of either, as the said survivor, and after the decease of the said survivor, the estate shall be divided as follows.'

"Immediately following the foregoing, the will contains the provisions for the three sons as above noted. The words just above quoted from the will, which was solemnly executed by the respective parties, must be held to be competent evidence of an understanding and agreement between the parties that after the death of one of them the will should be and remain the last will and testament of the survivor in accordance with the terms of which disposition should be made of the estate."[9]

The Supreme Court then concluded:

"Our review of this record brings the conclusion that the trial judge was correct in determining that the will in suit was the joint mutual will of Charles and Cathrin Schondelmayer, executed by them pursuant to their agreement so to do, and in consequence of the death of Charles Schondelmayer it was thereafter not subject to revocation."[10]

[9] 320 Mich 571.
[10] 350 Mich 575.

Considering these cases in connection with the facts of this case, we find that the joint and mutual will of Charles and Faith Rogers constituted and contained a contract between them whereby, after the death of either, the survivor would be bound by the terms of the will, that is, the will would be irrevocable.

The question then remains, does the language employed in the joint will clearly indicate an intent to terminate and destroy the right of survivorship which inheres in the tenancy by the entireties. In this case, in 1956, before making the joint will, the parties entered into the land contract for the farm, expressly describing themselves as "tenants by the entireties".

In Michigan real property law, tenancies by the entireties enjoy an ancient and hoary tradition.[11] The usual and durable method for a husband and wife to hold real estate has been as tenants by the entireties. The classic basis for a tenancy by the entireties was the concept that "the husband and wife are but one person in the law".[12] In a true tenancy by the entireties, each spouse is considered to own the whole and, therefore, is entitled to the enjoyment of the entirety and to survivorship. When real property is so held as tenants by the entireties, neither spouse acting alone can alienate or encumber to a third person an interest in the fee of lands so held.[13] Neither the husband nor the wife has an individual, separate interest in entireties property, and neither has an interest in such property which may be conveyed, encumbered or alienated without the consent of the other.

---

[11] See Kahn, *Joint Tenancies and Tenancies by the Entirety in Michigan—Federal Gift Tax Considerations,* 66 Mich L Rev 431, 440 (1968). See, also, *Pegg v Pegg,* 165 Mich 228; 130 NW 617 (1911).

[12] *E.g., Beaton v LaFord,* 79 Mich App 373; 261 NW2d 327 (1977).

[13] Michigan Land Title Standards (4th ed), Standard 6.11.

One incident of an estate by the entireties is that the survivor, whether husband or wife, is entitled to the whole and such right cannot be defeated by a conveyance by one spouse to a stranger. Traditionally, tenancies by the entireties could only be created by a written instrument of conveyance, which produced unity of persons, time, title, interest and possession.[14]

In the light of this background, it is not surprising that the trial judge stated that:

"far more, many many years, the estate planners, lawyers in general have been able to rely upon the fact that when they made a joint tenancy, especially between a husband and wife, which we call a tenants by the entireties holding, that that instrument was taken outside of the reach of a will, and the only way that that instrument could be brought in or the property represented by that instrument brought into the effect of a will would be of course on the last death."

We find ourselves in full sympathy with the trial judge's statement and believe that it is in accord with history and common usage and general reliance upon the tenants by the entireties ownership. It is argued here that the intentions of the parties were unclear at the time of execution of the will. Most likely, neither considered completely and fully what her or his intention would be in the many situations that could conceivably have arisen, and particularly not in what has actually happened. It is evident, however, that, as a practical matter, if all the widow, Faith Rogers, had was a life estate in the farm, then she did not have very much; her asset, *i.e.,* a life estate in the farm, would not be very saleable. If she had only a life

[14] *Budwit v Herr,* 339 Mich 265, 272; 63 NW2d 841 (1954); 13 Michigan Law & Practice, Husband and Wife, § 3, p 460.

estate, the practical effect would be to give both her children and her step-children (one of whom is plaintiff Robert C. Rogers) a virtual veto power over sale of the farm. Since the farm is the chief, if not only, asset, the widow is left indigent to work and live on the farm.

Under the circumstances, we are not convinced that the parties intended to nullify the tenancy by the entireties and to have the farm pass under the will. On the contrary, we believe that by placing the ownership of the farm in their two names as tenants by the entireties, Charles and Faith Rogers intended that, upon the death of either, the farm would be owned solely by the survivor.

In strong support of our reasoning and conclusion is *McLean v United States*,[15] where a claim for recovery of a federal estate tax depended upon construction of a joint and mutual will made by a husband and wife containing the usual provision leaving the residue to the survivor and providing "that the survivor of us will not change this will after the death of the other". When the husband died in 1958 and the wife in 1960, the essential issue was whether the surviving widow received a terminable interest[16] in real estate owned by them. The *McLean* court held flatly that the joint and mutual will *did not* affect the real property of the husband and wife which they held as tenants by the entireties and that, upon his death, the real property passed by operation of law to her as survivor, saying:

.

"Also, property held as entireties property passes by operation of law and not by will.

---

[15] 224 F Supp 726 (ED Mich, 1963).

[16] Terminable interest under the then marital deduction provision of the federal estate statute.

* * *

Because of these characteristics of entireties property, it is clear that no interest in the real estate of Warren and Agnes McLean could pass to a third person from the taxpayer, Warren D. McLean, on his death. Such property then passed by operation of law to Agnes McLean and, subsequently, by her will to the ultimate beneficiaries.

"It is true that a joint and mutual will constitutes a contract * * *; and upon the death of one of the parties, the will bcomes irrevocable. * * * It is also true that the Michigan courts will enforce a contract to dispose of property in a specified manner, but this does not change the result already stated that no interest passed from Warren McLean to persons other than the widow." (Citations omitted.)[17]

Of similar import is *Webber v Webber,*[18] where the Michigan Supreme Court said:

"The death of Mr. Webber ended his estate by entirety in this property, and during his lifetime he could no more devise it by will than he could by deed. * * *

"The part of the will giving the defendant a life estate only in property which at the time the will took effect she owned in fee, was void and did not put defendant to an election and could not, and did not, divest the title of defendant nor vest any title in plaintiffs."

Under all of the circumstances present in this case, we are not inclined to disturb the findings of the trial judge. We do not believe that he clearly erred either in his findings or his analysis of the law and, consequently, we affirm the judgment.

Affirmed.

---

[17] *McLean, supra,* p 729.
[18] 217 Mich 178, 180; 185 NW 761 (1921).