HUBERT *v.* TRAEDER.

1. HUSBAND AND WIFE—JOINT TENANCY—SURVIVORSHIP.
   Neither the contract nor the will of a husband can affect the title to lands owned by himself and wife as joint tenants.

2. CANCELLATION OF DEED—EVIDENCE.
   On a bill to set aside a deed appearing to have been given by an aged woman, without advice of counsel, in settlement of a groundless claim of the grantee, evidence examined, and *held,* that a decree granting the relief prayed was proper.

Appeal from Wayne; Donovan J.   Submitted January 5, 1905.   (Docket No. 18.)   Decided February 4, 1905.

Bill by Louisa Hubert against Anthony Traeder and Mary Traeder to set aside a deed.   From a decree for complainant, defendants appeal.   Affirmed.

*M. B. Breitenbach,* for complainant.

*James H. Pound,* for defendants.

HOOKER, J.   Louisa Hubert, a woman of advanced years, and relict of Edward Hubert, filed the bill in this cause to cancel a deed whereby she conveyed the premises in controversy to Anthony Traeder.   It is undisputed that this deed was executed in the office of Traeder's attorney, and it is claimed by the defendants that it was in settlement of then pending litigation between the parties, involving their respective claims to the premises.   The complainant asserts that the deed was procured through fraud.   The circuit court granted the prayer of the bill, and the defendants (husband and wife) have appealed.

Traeder's claim to the premises had its inception in an arrangement made between him and Edward Hubert under which he moved upon the premises with his wife and children, and performed farm labor, for which he was to

receive as compensation shelter and food for his family, $50 per annum for clothing, and ultimately the farm. No witness testifies to the terms of the agreement; such proof as the record contains consisting of statements of Hubert, in relation to the subsisting arrangements between himself and Traeder, made to third parties while Traeder lived upon the place. They are substantially that Traeder was to work the farm without wages, and have it after Hubert should be through with it; that he was to have house rent and $50 a year. There seems no doubt that such an arrangement was made between them. Traeder commenced work in May, 1901, and in September, 1901, Edward Hubert died, leaving a widow, the complainant. Before his death, Hubert made a will, in which he provided that his personal and real estate should go to the complainant, and at her death to Anthony Traeder. This will was admitted to probate. It was not long after his death that a controversy arose between complainant and the Traeders, in which the present solicitors were counsel for the respective parties. Apparently neighbors and friends took an interest, and the matter culminated in an attempt to settle the differences. Accordingly the parties went to the defendants' lawyer, who prepared the deed in controversy, and it was duly executed and delivered. Some time after, the parties being again in a quarrel, this bill was filed; and pending the suit the complainant married, and brought her husband to the home occupied by defendants, to live with her.

The record does not show that Mrs. Hubert took any part in the original contract with Hubert, unless it is to be inferred from the relations of the parties. At that time the title to the farm was in Hubert and his wife jointly, and it follows that upon his death the property passed to the complainant. His contract and his will were ineffective to vest any title to the land in Traeder. Apparently none of the parties understood this, and the complainant testified that, in the talk between the parties, Traeder often said to her that she had only a dower interest, or a

third interest, in the place. It is urged that this was a fraudulent means of procuring the deed from her, and that Traeder knew that it was false.

We are impressed with the unfairness of the settlement made between these parties. It is satisfactorily shown that the Traeders made the arrangement with Hubert in the belief that he owned the farm, and could make the agreement that was made; but, as we have intimated, the death of Hubert put an end to his interest in the farm, of which Mrs. Hubert became at once the sole owner in fee, discharged of all her husband's obligation to Traeder.

If it be admitted that this was hard upon Traeder, in that the consideration for his contract and services had in part failed, it was not, upon this record, chargeable to this complainant, who is not shown to have been a party to that contract.

We are not advised by the record that Traeder had a tangible claim of any kind against Mrs. Hubert, or that there was any legitimate reason for a controversy over her right to these premises. At the time of this settlement she was 65 years old, or thereabouts. The contract that she was said to have made was of that kind which most persons recognize as unfortunate and ill-advised, and, while courts cannot refuse to recognize their validity when clearly shown, they are not called upon to do so where they are unconscionable or when they are made under extraordinary circumstances or mistake of fact.

It is not improbable that this old lady was unaware of the true state of this title, or that her adversaries were insisting that it was less than a perfect title in fee, as she states. We cannot suppose that they were ignorant of it, for their counsel must have known it. With certain defeat staring them in the face, they succeeded in obtaining a settlement very advantageous to them. They say that this settlement was sought by her, and not by them, but that is not plausible. Her counsel were not consulted, and she is made to say that she did not want them to know

of it. All this may be true, and yet the influence that brought it about may have been adroit, to the verge of fraud. We feel that it was so. It was too successful to have been entirely free from guile.

The learned circuit judge who saw the witnesses and parties reached this conclusion, which, in our opinion, the testimony fairly warranted.

The decree is affirmed, with costs.

MOORE, C. J., and McALVAY, GRANT, and BLAIR, JJ., concurred.