PHELPS *v.* PIPHER.

1. WILLS—MUTUAL RECIPROCAL WILLS—CONTRACTS—EVIDENCE.
    An agreement to make mutual reciprocal wills may rest in parol.

2. SAME—MUTUAL RECIPROCAL WILLS—CONTRACTS—EVIDENCE.
    Contract to make mutual reciprocal wills by husband and wife *held,* to have been established by probate judge with whom the wills had been deposited.

3. SPECIFIC PERFORMANCE—CONTRACTS—PARTIES—MUTUAL RECIPROCAL WILLS.
    A beneficiary under agreement of spouses to make mutual reciprocal wills is a proper party to bring suit in equity for specific performance of the contract.

4. WILLS—MUTUAL RECIPROCAL WILLS—CONTRACTS—DEATH.
    It is the contract to make mutual reciprocal wills, not the wills themselves, which becomes irrevocable upon the death of one of the testators.

5. SPECIFIC PERFORMANCE—CONTRACTS—MUTUAL RECIPROCAL WILLS.
    A court of equity, under its fraud and trust jurisdiction, will decree specific performance of contract to make mutual reciprocal wills after the death of one party thereto.

6. WILLS—ESTATE CONVEYED BY WILL AND NOT BY CONTRACT TO MAKE IT.

An estate is conveyed by will and not by contract to make it, hence no claim of vesting under mutual reciprocal wills may be laid upon ground of its irrevocability.

7. SAME—MUTUAL RECIPROCAL WILLS.

Estates are vested under mutual reciprocal wills in the same manner as under ordinary wills.

8. SAME—SPECIFIC PERFORMANCE—VESTED RIGHT.

It is only the right of action to enforce a contract to make mutual reciprocal wills, if anything, which vests in beneficiary at death of one of the testators.

9. SAME—MUTUAL RECIPROCAL WILLS—ABROGATION OR MODIFICATION OF CONTRACT.

The mere failure to change mutual reciprocal wills or either of them before the death of either testator does not of itself establish that the parties did not agree to the abrogation or modification of the contract to make such wills.

10. SAME—MUTUAL RECIPROCAL WILLS—OTHER DISPOSITION OF PROPERTY.

An agreement to make mutual reciprocal wills, or the execution of wills in pursuance of such an agreement, does not bind the testators to keep the property covered thereby for the intended beneficiaries under such wills, or prevent them from making such other disposition of it, either *inter vivos* or by will, as they may desire and mutually agree, while both or all still live.

11. SAME—MUTUAL RECIPROCAL WILLS—ABROGATION OF CONTRACT—PAROL.

A contract to make mutual reciprocal wills not expressly requiring written consent to revocation of either of the wills executed may be abrogated or modified by parol, if the parties thereto so agree.

12. SAME—CONTRACTS.

A contract to make mutual reciprocal wills is subject to general principles of the law of contracts.

13. DEEDS—DELIVERY.

Where deeds left with a depositary were subject to recall during grantor's lifetime, there was no effective delivery.

14. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.

Since a suit for specific performance of an alleged contract to make mutual reciprocal wills is an equity case, it is reviewed by the Supreme Court *de novo*.

15. WILLS—MUTUAL RECIPROCAL WILLS—CONTRACTS—MODIFICATION
    —EVIDENCE.
    Evidence *held,* sufficient to establish that spouses had made an
    agreement to modify their previously-executed contract to make
    mutual reciprocal wills whereby plaintiff son was eliminated
    as their beneficiary and defendant daughter made the sole
    beneficiary.

16. SAME—MUTUAL RECIPROCAL WILLS—MODIFICATION OF CONTRACTS
    —CONSIDERATION.
    Parties to agreement to execute mutual reciprocal wills may
    waive performance under such contract either before or after
    the death of one of the parties thereto and the promise to carry
    out a modified agreement is consideration for release from the
    obligation to carry out the former contract.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted January 8, 1948. (Docket No. 36, Calendar No. 43,879.) Decided April 5, 1948. Rehearing denied May 18, 1948.

Bill by Ralph W. Phelps against Florence Pipher, individually and as executrix of the estate of James W. Phelps, deceased, to specifically enforce agreement to make a will. Decree for plaintiff. Defendant appeals. Reversed and bill dismissed.

*Edward E. Harwood* and *Howard & Howard,* for plaintiff.

*Roy H. Hagerman,* for defendant.

CARR, J.  Plaintiff brought suit in circuit court for the specific performance of an alleged agreement between his parents James W. Phelps and Bertha Phelps for the making of mutual reciprocal wills. Defendant is plaintiff's sister and is also executrix under the will of her father. It is plaintiff's claim that the agreement in question was made May 17, 1922. The proofs disclose that on that date Mr. and

Mrs. Phelps went together to the office of Hon. George M. Fields, probate judge of Cass county, that they discussed with Judge Fields the preparation of a will for each of them, and that in accordance with their desires wills were prepared and executed. The instrument executed by Mrs. Phelps gave her property to her husband for his lifetime, if he survived her, with remainder to their children. It is claimed that the will of Mr. Phelps was identical with that of his wife, except that he gave his property to her for her lifetime, if she survived him, with remainder to the same beneficiaries as were designated in her will. After their execution the instruments were left in the custody of the judge of probate of Cass county, receipts therefor being given to the parties. The judge of probate retained custody until after the death of Mrs. Phelps in November, 1941. Her will was then sent to the probate court of St. Joseph county for probate there, and the will of Mr. Phelps was delivered to him with the understanding, as it is claimed, that he would deposit it with the judge of probate of St. Joseph county, to which county the parties had removed some years previously.

James W. Phelps petitioned for the probate of the will of Mrs. Phelps. Shortly thereafter he executed to defendant deeds of all the real estate that he owned, leaving the conveyances in the custody of the scrivener. At the time a receipt was given to Mr. Phelps, reciting that the deeds were "to be delivered to his daughter, Florence Pipher. If not called for during his lifetime." On July 25, 1942, James W. Phelps executed another will revoking all former wills and leaving all his property to the defendant, with the exception of nominal bequests of one dollar each to his son and his grandchildren. Following his death in April, 1943, the will executed the previous July was offered for probate, and received over ob-

jections filed by plaintiff. From the order of the probate court admitting said will to probate, plaintiff appealed to the circuit court of St. Joseph county. The proceeding is now held in abeyance pending the outcome of the present suit for specific performance.

On the trial of the instant case in the circuit court plaintiff contended that the wills executed by his parents in 1922 were, under the agreement between the parties, mutual reciprocal wills, that under said agreement neither party had the right to revoke without the consent of the other, that there was no revocation, or attempted revocation, during the lifetime of Mrs. Phelps and that, after her death, James W. Phelps was irrevocably bound by said agreement. The trial judge concluded, on the basis of the proofs offered before him, that an agreement had been made between Mr. and Mrs. Phelps as claimed by plaintiff, that neither could revoke his or her will without the consent of the other, and, there having been no actual revocation of either will prior to the death of Mrs. Phelps, the husband was bound by the contract. A decree for specific performance was accordingly entered in accordance with the prayer of the bill of complaint. From such decree defendant has appealed.

On behalf of appellant it is claimed that the evidence is not of sufficient strength to justify a finding that Mr. and Mrs. Phelps entered into an agreement for the making of mutual reciprocal wills, as claimed by plaintiff. It is argued that the fact that wills executed under circumstances of the character here involved are identical, or substantially so, is not sufficient to establish an agreement to make mutual reciprocal wills. Reliance is placed on the decision of this Court in *Eicholtz* v. *Grunewald,* 313 Mich. 666. There, however, the instruments in question were not executed at the same time and the proofs intro-

duced failed to establish any agreement to make
mutual reciprocal wills. In the instant case the testimony of Judge Fields, which is not disputed by other
proofs, indicates that the parties were in agreement
with reference to the character of the wills to be executed by them. The following quotation from his
testimony seems to summarize the situation as the
witness recalled it:

"In 1922 they said they wanted their mutual wills
drawn. In such way wills would transfer their property to their children. After drawn the wills were
read to them. They said that was exactly what they
wanted. I informed them the wills were mutual."

The will of James W. Phelps was not produced in
court. It may be inferred from the record that it
was destroyed by him following the death of Mrs.
Phelps. However, Judge Fields testified that it was
identical with the instrument executed by Mrs.
Phelps, except that it gave her a life interest in the
property and named her as executrix.

An agreement of the character here in question
may rest in parol. *Smith* v. *Thompson,* 250 Mich.
302 (73 A. L. R. 1389); *Salsbury* v. *Sackrider,* 284
Mich. 493; *Eicholtz* v. *Grunewald, supra.* The testimony of Judge Fields was sufficiently clear and satisfactory to justify the finding of the trial judge that
an agreement was made, as claimed. Obviously, Mr.
and Mrs. Phelps, in 1922, desired to act together to
the end that their property might be disposed of
after their deaths in accordance with their desires.
The testimony as to subsequent conversations between them, hereinafter discussed, shortly before
the death of Mrs. Phelps, suggests that they had
in mind then the nature of the arrangement that
they had made and the necessity for mutual acquiescence in any change or modification. We think the

trial court reached the correct conclusion as to the making of the contract for mutual reciprocal wills. The validity of the contract here involved is not questioned. Neither is there any issue presented as to the right of plaintiff to bring suit in equity for specific performance. He was a beneficiary under the agreement between his parents, and if said agreement remained in force and effect until the death of Mrs. Phelps, he is entitled to the relief sought. *Carmichael* v. *Carmichael,* 72 Mich. 76 (1 L. R. A. 596, 16 Am. St. Rep. 528); *Wright* v. *Wright,* 99 Mich. 170 (23 L. R. A. 196); *Burgess* v. *Jackson Circuit Judge,* 249 Mich. 558; *Getchell* v. *Tinker,* 291 Mich. 267; *Winchell* v. *Mixter,* 316 Mich. 151. If such was the situation, the probating of the will of Mrs. Phelps, and the acceptance of benefits thereunder by Mr. Phelps, constituted a recognition and an affirmance on his part of the contract.

Defendant claims, however, that the contract made in 1922 was abrogated before the death of Mrs. Phelps by mutual agreement between her and her husband. In the consideration of this phase of the case it must be borne in mind that we are concerned here with the agreement between the parties for the making of the wills rather than with the wills themselves as such. In discussing a situation of similar character it was said in *Keasey* v. *Engles,* 259 Mich. 178:

"The rather common expression that a joint and mutual will is irrevocable by the survivor, after the death of one party to it, is not technically and legally correct. It is the contract to make the will, not the will itself, which is irrevocable. The contract is irrevocable because a court of equity, under its fraud and trust jurisdiction, will decree its specific performance. Such decree incidentally, although by indirection, enforces the will and so the latter often is

called irrevocable. *Doyle* v. *Fischer,* 183 Wis. 599 (198 N. W. 763, 33 A. L. R. 733) ; notes in 33 A. L. R. 739, 43 A. L. R. 1024, 57 A. L. R. 607, 60 A. L. R. 627 ; 28 R. C. L. p. 172; 40 Cyc. p. 2117. The distinction is important because the estate is conveyed by the will itself, not by the contract to make a will, and, consequently, no claim of vesting under the will can be laid upon the ground of its irrevocability. Estates are vested under a joint and mutual will in the same manner as under ordinary wills. It is only the right of action to enforce the contract, if anything, which vests in the beneficiary at the death of one of the testators.''

See, also, *Eicholtz* v. *Grunewald, supra; Winchell* v. *Mixter, supra.*

The mere failure to change the wills, or either of them, before the death of Mrs. Phelps does not of itself establish that the parties did not agree to the abrogation or modification of the contract which is the subject-matter of the suit. In 69 C. J. p. 1301, it is said :

"An agreement to make mutual wills, or the execution of wills in pursuance of such an agreement, does not bind the testators to keep the property, covered thereby, for the intended beneficiaries under such wills, or prevent them from making such other disposition of it, either *inter vivos* or by will, as they may desire and mutually agree, while both or all still live.''

In *Sage* v. *Sage,* 230 Mich. 477, a husband and wife executed a joint will, specifically declaring therein that neither should have the right to revoke without the written consent of the other. In terms the instrument disposed of all property that the parties might own at the time of their death. Subsequent to its making they agreed that a daughter should receive certain property in consideration for her

caring for her parents during their lifetimes. Such agreement was oral but the parties acted thereon and the husband and wife received benefits thereunder. Following the death of the husband the widow deeded the property to the daughter, subject to a life lease in herself. In an action brought to set aside such conveyance it was held by this Court that the husband and wife had the right to make a new agreement, pursuant to which the daughter should receive the property in question. Commenting thereon it was said:

"If this oral agreement had been reduced to writing and Ellen had made the deed after Patrick's death in pursuance of the agreement, there would be no question about the validity of the transaction. It was not reduced to writing, but the legal effect of the oral agreement was the same as though it had been in writing, because it was performed as to Patrick and he accepted and received all of the benefits which were to go to him by virtue of it."

And in *Smith* v. *Thompson, supra,* the Court, in sustaining the validity of an oral undertaking between a husband and wife and in holding that it could not be abrogated by the wife after the death of the husband, said:

"While by mutual consent the contract might have been abrogated during the lifetime of the husband, at his death it became an irrevocable obligation on the part of the wife."

See, also, *Elmer* v. *Elmer,* 271 Mich. 517; *Getchell* v. *Tinker, supra; Hale* v. *Campbell,* 46 Fed. Supp. 772; *Cooke* v. *King,* 154 Ore. 621 (61 Pac. [2d] 429, 62 Pac. [2d] 20, 107 A. L. R. 881).

It may be noted that in the case at bar it was not a part of the agreement between Mr. and Mrs. Phelps that written consent to revocation of either of the

wills executed should be required. They were not precluded from abrogating or modifying by parol if they so agreed. The situation is subject to general principles of the law of contracts.

In support of the claim that the parties mutually agreed to modify their contract as made in 1922, and that by such modification James W. Phelps was released therefrom, defendant offered the testimony of witnesses, apparently disinterested, as to conversations between Mr. and Mrs. Phelps not long before the death of the latter. According to the testimony of the witness Charles Welker, Mrs. Phelps stated, giving her reasons therefor, that if she had not been injured in a fall she "would have had her property changed so that Ralph would not have got any of it." Thereupon James W. Phelps said, "I will see to it that he don't get any of mine," and Mrs. Phelps replied, "I hope you do." Similar testimony was given by the witness Neva Jennison Poole who testified further that Mrs. Phelps stated, in substance, that she wanted defendant to have the property because "Florence had been so good and faithful to her." Defendant, as a witness in her own behalf, also testified, apparently without objection, to conversations between her parents in which they indicated that they were mutually agreed that the disposition of their property, as made in the mutual reciprocal wills, would be changed so that defendant would receive it. Defendant further testified that her parents discussed the matter several times, and that her father, after her mother's death, stated that he wished to carry out the modified agreement that he and Mrs. Phelps had made. It is defendant's claim, in substance, that the deeds above referred to and the will of Mr. Phelps, executed in July, 1943, were intended to carry out that purpose. Obviously, the deeds were not effective because no delivery

thereof, during the lifetime of the. grantor, was shown. The receipt given by the depositary clearly indicated that Mr. Phelps had reserved the right to recall the deeds, if he wished, and that the parties recognized his right to do so. Under such circumstances there was no effective delivery. *Weber* v. *Schafer,* 236 Mich. 345; *Hynes* v. *Halstead,* 282 Mich. 627.

This being an equity case it is our duty to consider it *de novo* on the record before us. We think the testimony above referred to is sufficient to establish that Mr. and Mrs. Phelps desired to change the agreement into which they had entered at the time their wills were prepared in 1922, and that they were in accord as to the changes to be made. The record further shows that because of the state of health of Mrs. Phelps it was not feasible to have new wills prepared and executed at the time, and that it was further agreed, in the event of her inability to participate in the desired changes, that Mr. Phelps would take necessary action to insure that defendant would receive their property. The testimony of the witnesses indicates that Mr. Phelps promised his wife that he would see to it that the property was so conveyed, and that Mrs. Phelps expressly approved and accepted his promise in that regard. This agreement amounted to a modification of the original contract of 1922 and operated to release James W. Phelps from complying with the terms of said contract after the death of his wife. *Sage* v. *Sage, supra.*

The parties by mutual agreement had the right to waive the performance of the obligation that Mr. Phelps had assumed under their contract. In the exercise of such right Mrs. Phelps did not require that he alter his will during her lifetime, nor did she base his right to make such alteration on a revocation of, or a change in, her own will. His prom-

ise furnished the consideration for her releasing him from his obligation. The situation presented is not affected by his failure to act prior to her death, or by the probating of her will. In the light of the understanding and agreement reached in 1941, it cannot be said that Mr. Phelps acted wrongfully in changing his will. In doing so he was merely carrying out the new arrangement made between himself and his wife shortly prior to her death. Under the record before us plaintiff is not entitled to the relief sought.

A decree will enter here reversing the decree of the circuit court and dismissing the bill of complaint, with costs of both courts to defendant.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.