## KELLEY *v.* DODGE.

1. SPECIFIC PERFORMANCE—ORAL CONTRACTS TO CONVEY· LAND.

Equity courts have jurisdiction to decree the specific perform-
ance of verbal agreements to devise land, where the verbal
agreement is satisfactorily established.

2. CONTRACTS—AGREEMENT TO LEAVE PROPERTY BY WILL.

It is competent for a person to make a valid agreement to make
a particular disposition of his property by last will and
testament.

3. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.

The Supreme Court, hearing a chancery case *de novo*, does not
reverse a decree unless persuaded it is not in accordance
with the just rights of the parties.

4. SPECIFIC PERFORMANCE—ORAL CONTRACT TO CONVEY LAND—EVI-
DENCE.

Evidence supported trial court's finding in suit for specific per-
formance that deceased father and daughter had orally
agreed with plaintiffs that if latter would make improve-
ments and repairs upon dilapidated cottage and pay $150
per year for duration of lives of decedents that decedents
would pay taxes and insurance and leave the property to
plaintiffs, notwithstanding the daughter, as survivor of her
father had not devised the property to plaintiffs.

5. SAME—PAYMENTS—REPAIRS—IMPROVEMENTS—INTEREST—EVI-
DENCE.

Trial court's findings in suit for specific performance of an oral
contract to convey land that plaintiff purchasers owed $335

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 49 Am Jur, Statute of Frauds §§ 5, 403, 506, 539; 57
Am Jur, Wills § 192 *et seq.*
[1, 4, 5] Decedent's agreement to devise, bequeath, or leave prop-
erty as compensation for services. 69 ALR 14; 106 ALR 742.
[2] 57 Am Jur, Wills § 166 *et seq.*

in payments of so-called rent, $403.23 for repairs and improvements and $111.77 for interest and incidentals are not disturbed, being supported by evidence.

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted June 18, 1952. (Docket No. 44, Calendar No. 45,476.) Decided September 4, 1952.

Bill by D. L. Kelley and wife against Elise Dodge, individually and as executrix of the estate of Marion Gleason, deceased, and others to specifically enforce oral contract to devise real property. Decree for plaintiffs. Defendants appeal. Affirmed.

*J. Donald Murphy,* for plaintiffs.

*Reber & Reber,* for defendants.

SHARPE, J. Plaintiffs, D. L. Kelley and Hazel Kelley, filed a bill of complaint for specific performance of an oral contract claimed to have been made by A. Wilder Gleason and Marion Gleason, to devise certain real estate located at Hess lake, Newaygo county, Michigan. In 1938, the title to the real estate involved became vested in A. Wilder Gleason and Marion Gleason. The terms of the alleged agreement, as set forth in plaintiff's bill of complaint, read as follows:

"That during the spring of 1942, the aforementioned A. Wilder Gleason, who was one of the joint owners of the property described above, made a verbal agreement with the plaintiffs, whereby said A. Wilder Gleason agreed that, commencing as of the year 1942, the plaintiffs would pay to him and his daughter, Marion Gleason, the decedent, the sum of $150 per year, during the lifetime of the aforementioned A. Wilder Gleason and during the lifetime of Marion Gleason, the above named decedent, for the purchase by the plaintiffs of the premises described above; that it was agreed between the plaintiffs and A. Wilder Gleason and Marion Glea-

son, the decedent, that they, the Gleasons, would pay the taxes and insurance on the property during the lifetime of the aforementioned A. Wilder Gleason and Marion Gleason; that it was agreed between the plaintiffs and the Gleasons that if the plaintiffs would pay to them the aforementioned sum of $150 per year that they, the Gleasons, would leave said property to the plaintiffs upon the death of the survivor of A. Wilder Gleason and Marion Gleason, the decedent; that the aforementioned Gleasons agreed to give the plaintiffs immediate possession of the property.

"The aforementioned A. Wilder Gleason died July 23, 1946, and, subsequent thereto, Marion Gleason, the above named decedent, again confirmed to the plaintiffs the terms of the agreement, as set forth above, and specifically reagreed with the plaintiffs that if the plaintiffs would pay to her, Marion Gleason, the sum of $150 per year during the period of her lifetime that she, Marion Gleason, would leave the real estate above described to the plaintiffs upon her death; that the aforementioned Marion Gleason agreed to pay the taxes and insurance on the premises during her lifetime, to all of which the plaintiffs agreed, and, in pursuance of said agreement, the plaintiffs continued to pay the sum of $150 per year to Marion Gleason, the above named decedent, subsequent to A. Wilder Gleason's death on July 23, 1946, said payments having been made for each year from 1942 to 1950, inclusive, the said payment being due in September of each and every year."

The record shows that A. Wilder Gleason died July 23, 1946, and Marion Gleason died February 26, 1951, leaving a will dated May 24, 1949, devising the above property to J. A. Gleason, Esther Parks, Roma Duff and Erma Dodge.

The will also provided "and D. L. Kelley shall have first option to purchase same." The cottage property involved in these proceedings had been owned by the Gleason family and used by them as a summer

home for nearly 40 years prior to 1942. About the year of 1937 the Gleasons purchased a summer cottage on another lake. The condition of the cottage in 1942, when plaintiffs first occupied it in 1942 was dilapidated and untenantable. Plaintiffs have occupied the cottage since 1942. Plaintiffs claim that, relying upon the aforesaid agreement, they made extensive and costly improvements consisting of

"(1) Drilling a new water well and installing an electric pump thereon.

"(2) Installing a new sink in the kitchen of the cottage.

"(3) Rewiring of the cottage for electricity.

"(4) Installing electric fixtures in the cottage.

"(5) Painting the cottage inside and out.

"(6) Sealing the cottage with plywood on the inside, both upstairs and downstairs.

"(7) Installing new screens on the cottage on 2 occasions.

"(8) Repairing the roof.

"(9) Repairing the stairs leading from the cottage to the lake.

"(10) Building a new dock at the lake.

"(11) Installing cement steps at the back of the cottage.

"(12) Installing new linoleum in the kitchen and porch.

"(13) Installing a trap door at the top of the stairs.

"(14) Laying a cement floor in the garage.

"(15) Screening in the back and front porch.

"(16) Repairing the mantel and fireplace.

"The bill of complaint alleges the cost of these improvements to be $2,000."

The value of the property in 1942 was approximately $900.

The cause came on for trial, and at its conclusion the trial court found as a fact that the evidence offered by plaintiffs established the oral agreement as

claimed by plaintiffs. In an opinion the court made the following finding of facts:

"The proofs are undisputed that the plaintiffs went into possession of the property in the spring of 1942 after the making of the verbal contract which they rely upon and have since been and are still in possession of the property. They have made many improvements and repairs which the bill alleges amount to $2,000 or thereabouts. The proofs are somewhat uncertain as to the exact amount of the expenditures which have been made by way of permanent repairs or improvements upon the property. These improvements under the undisputed proofs, include the installation of a new well and pump, a new sink, rewiring of the cottage for electricity, electric lights, painting the cottage both inside and out and also a garage, new screens, the construction of new cement steps and a cement floor in the garage, a new dock and a new mantel, porch blinds and sealing up of the cottage on the inside, both upstairs and down.

"I am satisfied after a careful examination of all the evidence in this case that there was a contract entered into verbally, as claimed by the plaintiffs. The most clear explanation of that contract is found in the deposition of the witness, Donna Whitehead King. Under the contract as testified to by her there was an obligation on the part of the plaintiffs to keep the property in repair and in addition thereto to pay the sum of $150 per year. The proofs are undisputed that the Kelleys were never asked to vacate the premises at any time prior to the death of either Mr. Gleason or his daughter, Marion Gleason. In other words, the contract remained in effect at the time of the death of Marion Gleason without having been rescinded or terminated by any affirmative action on the part of either Mr. Gleason or his daughter Marion.

"This leads us to the question as to whether there was anything left undone by way of performance

on the part of the plaintiffs which they were required to do but had failed to perform at the time of the death of Marion Gleason to entitle them to the relief prayed for in the bill of complaint. The burden of proof rests upon the plaintiffs to show a performance of their part of the contract. Under the contract as interpreted by this court it was the Kelley's duty to make both the temporary and permanent repairs and to relieve the Gleasons of the necessity of any expenditures whatsoever on the property. I am inclined to allow the claim made by the defendants of a total of $403.23 for such repairs and improvements. It was also the duty of the Kelleys to keep up the payments in full of the $150 per year. It is a bit difficult to determine with mathematical accuracy just where the parties stand with relation to these payments. The defendants claim there is an unpaid balance in this connection of $335 and they rely upon income tax reports and some rather poorly kept records by Marion Gleason. The plaintiffs, it is true, are handicapped because they are unable to testify and supply their own records. I am forced under the circumstances in view of the fact that the burden of proof is upon the plaintiff to give credence to and allow the amount of $335 as being unpaid upon these annual payments. This makes a total of $738.23. Obviously, some time has elapsed since these accounts became due and payable and some allowance for interest should be made thereon. It is difficult and almost impossible to make an accurate computation of the same. It is, however, the final finding of this court as the nearest approach which I am able to make, that in addition to the sum of $738.23, the plaintiffs should also pay an additional amount to cover any incidentals, including interest that may have accrued, to make a total of $850."

Defendants appeal and urge that the evidence failed to establish the existence of a fair and equitable contract with sufficient certainty to be capable of specific performance.

It is an established principle that equity courts have jurisdiction to decree the specific performance of verbal agreements to devise land where the verbal agreement is satisfactorily established. It is competent for a person to make a valid agreement to make a particular disposition of his property by last will and testament; see *Carmichael* v. *Carmichael,* 72 Mich 76 (1 LRA 596, 16 Am St Rep 528).

In *Moore* v. *Moore,* 231 Mich 209, we said:

"We hear chancery cases *de novo;* but we do not, and should not, reverse decrees unless we are persuaded they are not in accordance with the just rights of the parties."

Donna Whitehead King, an ex-school teacher, and a witness produced in behalf of plaintiffs, testified to a conversation she had with A. Wilder Gleason:

"*A.* He told me he and Marion had an agreement with Hazel and Dave Kelley wherein they paid a certain amount of money, a certain amount a year, and that in return the Kelleys were to keep up improvements and repairs and he and Marion were to pay taxes and insurance, because it was such a small amount; and when he and Marion were finished with the cottage, it would belong to Hazel and David.

"*Q.* That is what Wilder Gleason said the agreement was, to you?

"*A.* And Marion was there, yes, sir."

She also testified to a conversation she had with Marion Gleason subsequent to the death of A. Wilder Gleason:

"*Q.* Will you state what Marion Gleason told you on that occasion concerning the arrangement that

she had made with D. L. Kelley and Hazel Kelley concerning this cottage?

"*A*. Yes. She said to me, 'I don't know why I don't sign over the cottage to Dave and Hazel now, I think I just keep it for sentimental reasons;' but she said, 'We have an agreement that they pay me so much a year and they make improvements and repairs and I have agreed it will be theirs when I pass on.' "

Other testimony of like import was given by W. J. Brown, a close friend of Marion Gleason; Ed Henning, township supervisor, Mr. and Mrs. Lee Robey, merchants in Newaygo since 1927, Mary Jerome, who with her husband owned and operated a drugstore, Dulcie Hammond, an employee of the telephone company, Fannie Johnson, a close friend of Marion Gleason for 25 years, and Mrs. William Faust, a neighbor of Marion Gleason.

We have examined the record and analyzed the testimony of all witnesses, and conclude that the testimony produced in behalf of plaintiffs sustains the finding of the trial judge that A. Wilder Gleason and Marion Gleason did enter into an oral contract with plaintiffs as alleged in their bill of complaint. Defendants also urge that the undisputed acts of the deceased, Marion Gleason, were so inconsistent with the alleged contract as to constitute convincing proof that the oral contract was never entered into. The only act of Marion Gleason that was inconsistent with the oral contract was the making of her will, wherein she failed to devise the property to plaintiffs. Her reasons for so doing are unexplained in the record, but there is convincing proof that after the death of her father she made the oral agreement as alleged by plaintiffs.

The trial court found as a fact that upon the death of Marion Gleason the plaintiffs owed her estate the sum of $335, so-called rent, and the further sum of $403.23 for repairs and improvements made by de-

ceased upon the property, and the further sum of $111.77 for interest and incidental repairs.

The record justifies these facts, but they do not detract from the fact that plaintiffs and Marion Gleason did enter into an oral agreement concerning the property. The record satisfies us that the agreement was made, and that it was equitable. This case involves issues of fact. In such cases the conclusion of the trial judge will not be disturbed when fairly supported by evidence. We so find. The decree is affirmed, with costs to plaintiffs.

DETHMERS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.