Walter R. McLEAN, Executor Under the Will of Agnes O. McLean, Deceased, Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 23095.

United States District Court
E. D. Michigan, S. D.

Dec. 27, 1963.

John B. DeVine, Ann Arbor, Mich., for plaintiff.

John B. Jones, Jr., Acting Asst. Atty. Gen., Edward S. Smith, David A. Wilson, Jr., Solomon Fisher, Attys., Dept. of Justice, Washington, D. C., Lawrence Gubow, U. S. Atty., Robert F. Ritzenhein, Asst. U. S. Atty., Detroit, Mich., for defendant.

FREEMAN, District Judge.

This is an action for the recovery of that portion of a federal estate tax paid by plaintiff pursuant to a deficiency assessment against the estate of decedent's husband, Warren D. McLean, and is now before the Court on cross-motions for summary judgment based on a stipulation of all pertinent facts.

On March 28, 1955, Warren D. McLean and Agnes O. McLean, husband and wife, executed a joint and mutual will in usual form, each giving all of his or her property to the survivor and further providing "that the survivor of us will not change this will after the death of the other."

On May 3, 1958, Warren D. McLean died and the will was subsequently filed in the Probate Court for Washtenaw County, Michigan, as his last will and testament, but no probate proceedings were requested or had thereon because of an affidavit filed by Walter R. McLean, named therein as the Executor, stating that there was no estate to be probated.

On August 3, 1959, a federal estate tax return was filed on behalf of the estate of Warren D. McLean and the tax of $14,294.51 shown to be due thereon was paid. Subsequently, there was assessed against such estate a deficiency in tax and interest in the amount of $40,814.92 which, together with additional interest of $421.30, or a total of $41,236.22, was paid on November 16, 1960. A claim for refund was disallowed and this suit followed.

Agnes O. McLean died on August 22, 1960, leaving the joint will as her last will and testament, which was admitted to probate and plaintiff was duly appointed Executor thereof.

At the time of his death, Warren D. McLean (hereinafter sometimes referred to as the "taxpayer") owned property for which he had furnished the consideration, classified as follows:

1. Life insurance on his life, with proceeds payable to his wife.

2. Personalty with his wife and third persons as joint tenants with the right of survivorship.

3. Personalty and realty with his wife as joint tenants with the right of survivorship, or as tenants by the entireties.

4. Personalty in his individual name.

The taxpayer's estate claimed that all of the above property, constituting the entire gross estate, qualified for the marital deduction under Section 2056(a) of the 1954 Internal Revenue Code, 26 U.S. C. § 2056(a), but now concedes that the personal property owned by the taxpayer and his wife and third persons as joint tenants with right of survivorship (classification #2) does not qualify. The Government concedes, for the purpose of this trial, that the proceeds of life insur-

ance on taxpayer's life payable to his wife (classification #1) does qualify for the marital deduction.

The Government contends that the District Director properly disallowed the claim for refund for the reason that the interest in the remaining property passing to the surviving spouse, Agnes O. McLean, was a terminable interest under Section 2056(b) (1) of the 1954 I.R.C., 26 U.S.C. § 2056(b) (1), that does not qualify for the marital deduction, which is the sole question presented by these summary judgment motions.. The allowable deduction is limited in accordance with the statute to one-half of the adjusted gross estate.

Section 2056(b) (1) of the 1954 I.R.C. in pertinent part provides:

"(1) General Rule.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; "

As heretofore stated, the only issue for decision is whether Section 2056(b) (1) applies to the properties in classification 3 consisting of real estate owned by taxpayer and his wife as tenants by the entireties and certain bank accounts in their joint names, according to the schedule of properties in the gross estate of taxpayer, Warren D. McLean, as set forth in the stipulation of facts, all of which were acquired prior to the date of the joint will. In view of the values of such properties and the marital deduction limitation, it is only necessary to determine the applicability of Section 2056 (b) (1) to the real estate owned as tenants by the entireties.

Plaintiff contends that such property passed absolutely to the surviving spouse, Agnes O. McLean, on the death of taxpayer by operation of Michigan law and that the joint will, including the contract provision obligating the survivor not to change the will after the death of the other spouse, did not diminish in any way the absolute title by which she held the property under Michigan law following the death of her husband. Plaintiff argues that the surviving widow received no interest in the entireties property under taxpayer's will, that no interest in such property passed to any other person under his will, that such properties were passed on to the ultimate beneficiaries by the widow's will, and, hence, Section 2056(b) (1) does not apply so as to disallow the marital deduction.

The argument of the Government is vague and unclear, but in essence seems to be that the contractual obligation of the joint will imposed restrictions on all property acquired by Agnes O. McLean upon her husband's death, and, in effect, changed her ownership therein so as to constitute a terminable interest in the nature of a life estate passing to the surviving spouse under the above statute.

In construing and applying Section 2056(b) (1) to the relevant facts, the precise questions are (1) whether Mrs. McLean, the surviving widow, received a terminable interest in the real estate; and (2) whether any interest in such real estate passed to any person other than the surviving spouse.

Under Michigan law, neither the husband nor the wife has an individual, separate interest in entirety property, United States v. Nathanson (D.C.

Mich.), 60 F.Supp. 193, Long v. Earle, 277 Mich. 505, 269 N.W. 577, Vinton v. Beamer, 55 Mich. 559, 22 N.W. 40, and neither has an interest in such property which may be conveyed, encumbered or alienated without the consent of the other. Schram v. Burt (CCA 6, 1940), 111 F.2d 557; French v. Foster, 307 Mich. 361, 11 N.W.2d 920; Arrand v. Graham, 297 Mich. 559, 298 N.W. 281, 300 N.W. 16, 136 A.L.R. 1206; Long v. Earle, supra; Hearns v. Hearns, 333 Mich. 423, 53 N.W.2d 315; Schultz v. Silver, 323 Mich. 454, 35 N.W.2d 383. One incident of an estate by the entirety is that the survivor, whether husband or wife, is entitled to the whole, and such right cannot be defeated by a conveyance by one spouse to a stranger. Guldager v. United States (CA 6, 1953), 204 F.2d 487; Lilly v. Schmock, 297 Mich. 513, 298 N.W. 116; Detroit & Security Trust Co. v. Kramer, 247 Mich. 468, 226 N.W. 234. Also, property held as entireties property passes by operation of law and not by will. Webber v. Webber, 217 Mich. 178, 185 N.W. 761; Naylor v. Minock, 96 Mich. 182, 55 N.W. 664; Hubert v. Traeder, 139 Mich. 69, 102 N.W. 283.

In the Webber case, the husband attempted by will to give his wife a life estate in property held at the husband's death by the entireties. At page 180, of 217 Mich., page 761 of 185 N.W. the Michigan Court said: "The death of Mr. Webber ended his estate by entirety in this property, and during his lifetime he could no more devise it by will than he could by deed."

Because of these characteristics of entireties property, it is clear that no interest in the real estate of Warren and Agnes McLean could pass to a third person from the taxpayer, Warren D. McLean, on his death. Such property then passed by operation of law to Agnes McLean and, subsequently, by her will to the ultimate beneficiaries.

It is true that a joint and mutual will constitutes a contract, George v. Conklin, 358 Mich. 301, 100 N.W.2d 293; Kelley v. Dodge, 334 Mich. 499, 54 N.W.

2d 730; Schondelmayer v. Schondelmayer, 320 Mich. 565, 31 N.W.2d 721; Getchell v. Tinker, 291 Mich. 267, 289 N.W. 156; and upon the death of one of the parties, the will becomes irrevocable. George v. Conklin, supra; Getchell v. Tinker, supra; and Phelps v. Pipher, 320 Mich. 663, 31 N.W.2d 836. It is also true that the Michigan courts will enforce a contract to dispose of property in a specified manner, but this does not change the result already stated that no interest passed from Warren McLean to persons other than the widow.

The Government appears to argue in its brief (p. 7) that the joint and mutual will changed the form of ownership of the property, but cited no authority for such proposition. While it is true that the courts have held that jointly held property or property held as tenants by the entireties can be and is subject to a contract which is embodied in a joint and mutual will, such decisions do not mean that at the time the joint and mutual will was made, the form of ownership of the property changed.

It is clear that a terminable interest was not created by the situation presented in the instant case. Awtry's Estate v. Commissioner of Internal Revenue (CA 8), 221 F.2d 749; Schildmeier v. United States, D.C., 171 F.Supp. 328. In the Awtry case, the Commissioner denied a marital deduction to the surviving spouse as to property owned by decedent and spouse in joint tenancy, claiming that a joint and mutual will executed by decedent and spouse had the effect of converting the survivor's interest in the joint property into a terminable interest in the nature of a life estate. The Tax Court denied the marital deduction, but the Eighth Circuit reversed. The Circuit Court held that a terminable interest was not created, but, instead, a fee estate went to the survivor by operation of state law. The same result would be true in Michigan. The Government tries to say that the Iowa law followed in the Awtry case is not the same as that in Michigan, but such claimed differences were not pointed out.

The Court in Awtry, 221 F.2d at page 759, states:

"As a separate and distinct reason for refusing to deny the marital deduction as to the jointly-owned property, we note that so far as the record discloses the survivor voluntarily surrendered the right to revoke her will. Any restriction which may have been placed upon her right to revoke could, under the circumstances of the case, only be imposed upon her by her voluntary act. The husband was without any power or right to restrict the wife's right to deal with property she might own at the time of her death. The estate tax involved here is that due from the husband's estate. It seems unreasonable to hold that by his contract the husband could, for estate tax purposes, reduce his wife's independently acquired fee simple title to what is defined in the estate tax law as a terminable interest. The contractual restrictions now relied upon by the Commissioner were not imposed by Mr. Awtry in connection with the creation of the various joint tenancies. If the contract now relied on was part of the consideration for the joint tenancies, there would be more merit in the Commissioner's present position. Such, however, is not the case under this record."

The Schildmeier case reached a similar result. The Court in that case said (171 F.Supp. pp. 335–336):

"The Court construes said will and the separable contract of the spouses embodied therein, and so finds, that no provisions of either the will, or of such contract, establish any intention of the spouses, or had the legal effect, either of creating any trust, or of creating any life estate in the surviving spouse, with remainders in the beneficiaries under said contract, in any of the property here in issue, previously jointly acquired and continuously so owned by them until decedent's death, and that the legal titles to all thereof, as vested by operation of law in the surviving spouse, were wholly unaffected by any provisions of either said will, or said contract; and that no transfer of any interests in any jointly held property, or titles, to any beneficiary, named in such contract, resulted at decedent's death; but that independent subsequent acts of the survivor during her lifetime, were required to effect any transfers of her vested titles to the beneficiaries, so as thereby to change her absolute control and ownership, of any, or all, such property; and any rights of the beneficiaries were wholly inchoate, and subject to waiver by them, until and unless the survivor should perform such contract, or directly breach it. That accordingly, the court finds that the absolute titles so becoming vested solely in plaintiff, at decedent's death, were in no way rendered terminable by said will, or by said contract, and that said estate was entitled to the marital deduction, as therein claimed, and as still due under the audit, and the Collector's elimination thereof and his disallowance of the refund of the deficiency tax paid, were erroneous and illegal under the facts of this case."

The Government argues that if any interest does qualify for the marital deduction, the value of the interest so passing is not equal to the value of the entire property because of the limitations placed on the surviving spouse's interest. However, the reasoning of the Court in the Awtry case seems sound, and can be applied here as well as in determining if there is a terminable interest. At page 760 of 221 F.2d the Court says:

"We will now consider the question of the meaning of the words 'passed from the decedent' in section 812(e) (1) (B), set out in footnote 1. We do not believe that there is anything which requires us to give these words any strained or artificial con-

struction. The natural construction should prevail. Section 812(e) (3) defines the situations where interests are to be considered as passing from the decedent. There is nothing in such definitions which requires us to hold that a restriction voluntarily placed by a beneficiary upon her own property turns an absolute interest into a terminable one. As to this Judge Arundell, in his dissenting opinion, states:

'Congress sought in the Revenue Act of 1948 to equalize the treatment accorded residents of community property states and non-community property states and to that end there was provided the so-called marital deduction with which we are here dealing. Deductions are determined by Congress and if, as I believe, the joint property in question came to petitioner by operation of law, the full test of the statute is met. It seems to me that the holding of the majority serves to defeat the purpose Congress had in mind.' "

Agnes McLean got an absolute title to the property, but she, herself, was under certain obligations. An obligation was not imposed upon her by the decedent in connection with the passing of a property interest. Instead, the obligation was imposed by a "contract" between her and her husband, which became irrevocable at her husband's death.

The Government relies on Lindsey v. United States, D.C., 167 F.Supp. 136, and Piatt v. Gray, 6 Cir., 1963, 321 F.2d 79. The court in the Lindsey case clearly pointed out that the Awtry case was distinguishable, the court stating (167 F.Supp. pp. 138–139): "Awtry's Estate v. Commissioner, 8 Cir., 221 F.2d 749, principally relied on by plaintiffs, is distinguishable from the present case. The testamentary instrument involved in that case was a joint and mutual will; it was both the will of the decedent and the will of the survivor. In Awtry the remainder was set up by and passed under the survivor's will. In the instant case, the

remainder was created by and passed under the *decedent's* will. * * *" The Piatt case is also not relevant, since that case dealt with a typical life estate situation and with property that passed by will.

Since the entirety property does qualify for the marital deduction, and the value of such property exceeds one-half of the adjusted gross estate, this Court need not consider whether the personalty in taxpayer's individual name and the personal property owned jointly by taxpayer and his wife qualify for the marital deduction.

An appropriate order may be submitted.